IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DOUG GREISEN**, an individual,

    Plaintiff,

v.

**JON HANKEN**, an individual, **JOHN DOES 1-5**, and **CITY OF SCAPPOOSE**, an Oregon municipality,

    Defendants.

Case No.3:14-cv-01399-SI

**OPINION AND ORDER**

John D. Ostrander and William A. Drew, ELLIOTT, OSTRANDER & PRESTON, P.C., 707 S.W. Washington Street, Suite 1500, Portland, Oregon 97205. Of Attorneys for Plaintiff.

Karen M. Vickers and Blake H. Fry, MERSEREAU SHANNON L.L.P., One S.W. Columbia Street, Suite 1600, Portland, Oregon 97258. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

    Doug Greisen ("Mr. Greisen") brings this suit against Jon Hanken, the former city manager for the City of Scappoose ("Mr. Hanken"); John Does 1-5, individuals alleged to have acted in concert with Mr. Hanken, in their official and personal capacities ("Doe Defendants"); and the City of Scappoose (the "City"), an Oregon municipality that is Mr. Greisen's former employer (collectively, "Defendants"). The complaint alleges seven statutory and common-law

PAGE 1 – OPINION AND ORDER

claims. The first five claims are asserted against all Defendants, the sixth is alleged only against the City, and the seventh is raised only against Mr. Hanken. Defendants move to dismiss the first through fifth claims as to Mr. Hanken only and the seventh claim entirely, for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

## LEGAL STANDARDS

### A.  Motion to Dismiss, Failure to State a Claim

In reviewing a motion to dismiss for failure to state a claim, the court's review is limited to the contents of the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

PAGE 2 – OPINION AND ORDER

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

"A complaint should not be dismissed unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clegg*, 18 F.3d at 754. Dismissal under Rule 12(b)(6) is generally without prejudice, and dismissal without leave to amend is proper only in "extraordinary" cases. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

## B. Federal Subject-Matter Jurisdiction

Federal courts are courts of limited jurisdiction and may exercise only that power authorized by the Constitution and federal statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The burden of establishing jurisdiction rests upon the party asserting it. *Id. See also* Fed. R. Civ. P. 8(a) ("A pleading . . . must contain: (1) a short and plain statement of the grounds for the court's jurisdiction").

Federal courts are obliged to inquire sua sponte "whenever a doubt arises as to the existence of federal jurisdiction." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977). *See also Bernhardt v. Cnty. of L.A.*, 279 F.3d 862, 868 (9th Cir. 2002); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A court may raise the question of subject-matter jurisdiction at any time during the pendency of the action. *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002). A court may inquire about subject-matter jurisdiction, whether the parties raise the issue

PAGE 3 – OPINION AND ORDER

or not. *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004). The court may also dismiss an action sua sponte if it finds jurisdiction lacking. *Fiedler v. Clark*, 714 F.2d 77, 78 (9th Cir. 1983).

## BACKGROUND

Mr. Greisen filed this suit on August 29, 2014 against his former employer, the City of Scappoose, former City Manager Jon Hanken, and John Does 1-5, asserting seven statutory and common-law claims: (1) violations of Mr. Greisen's civil and constitutional rights under 42 U.S.C. § 1983 against all Defendants; (2) retaliation for whistleblowing under Or. Rev. Stat. ("ORS") § 659A.203 and ORS § 659A.199, against all Defendants; (3) wrongful discharge, against all Defendants; (4) intentional or reckless infliction of emotional distress, against all Defendants; (5) defamation, against all Defendants; (6) unpaid wages or expenses, against the City only; and (7) tortious interference with contract, against Mr. Hanken only. Mr. Greisen claims federal subject-matter jurisdiction based on his § 1983 claim under 28 U.S.C. §§ 1331, 1343, and 1367.

In his complaint, Mr. Greisen, the longtime Chief of Police in Scappoose, alleges that he engaged in good faith whistleblowing about what he reasonably believed was Defendants' "mismanagement and/or abuse of authority." Pl.'s Compl. (Dkt. 1), Introductory Statement ("Intro."), ¶¶ 8, 18. Mr. Greisen asserts that after he questioned then-City Manager Hanken about what Mr. Greisen perceived as mismanagement, Mr. Hanken told Mr. Greisen to keep quiet. *Id.* at Intro. Mr. Greisen alleges that Mr. Hanken and the Doe defendants then retaliated against him with excessive discipline and by publicly undermining his reputation. *Id.* at Intro. Mr. Greisen asserts that Mr. Hanken and the Doe Defendants made false charges against Mr. Greisen that involved or implied personal and professional dishonesty, immorality, or malfeasance in office. *Id.* ¶ 5. He adds that Defendants, starting in late summer 2013, subjected

PAGE 4 – OPINION AND ORDER

him to public humiliation by releasing skewed and misleading information to others, including print and television media. *Id.* ¶ 10. He further alleges that one or more of the Defendants released Mr. Greisen's confidential home address, leading numerous members of the media to invade his private property and causing him concerns for his family's safety from violent individuals who may hold a grudge against Mr. Greisen as the City's chief law enforcement official. *Id.* ¶ 10.

Mr. Greisen also asserts that the public attacks by Mr. Hanken and the Doe Defendants led to Mr. Greisen's termination as the City's Police Chief and foreclosed the possibility of his future employment in law enforcement and that he has not had the benefit of a "name-clearing" hearing. *Id.* ¶¶ 5, 7-8. Mr. Greisen claims that the false charges subjected him to public humiliation and extreme ridicule in Scappoose and that as a result he has had to curtail his volunteer and social activities and has suffered stress, sleeplessness, and irritability. *Id.* ¶¶ 10-11. Mr. Greisen alleges that, at some point, he was told not to associate with the City and was banished from public property, including City parks and offices. *Id.* ¶¶ 11, 12. This alleged banishment was rescinded on or about February 11, 2014, at which point Mr. Greisen attended a City workshop, where the Mayor allegedly "stuck his tongue out" at Mr. Greisen. *Id.* ¶ 12.

Mr. Greisen seeks varied relief under his seven claims, including: compensatory damages of approximately $500,000 and pre-judgment interest for his § 1983 claim; punitive damages for the § 1983 claim; compensatory damages on several claims; non-economic damages for his emotional pain, suffering, inconvenience, and mental anguish; reimbursement of unpaid expenses and statutory penalties for the sixth claim; and reasonable attorney fees, expert witness fees, and costs under several claims. *Id.* ¶¶ 9, 10, 13, 14, 20, 28, 32, 35.

**DISCUSSION**

Defendants raise three arguments in support of their Rule 12(b)(6) motion to dismiss all claims against Defendant Hanken. First, Plaintiff's first claim, alleging violations under § 1983, should be dismissed as to Mr. Hanken because he resigned as city manager six months before Mr. Greisen's allegedly wrongful termination on May 8, 2104. Second, under the Oregon Tort Claims Act, ORS §§ 30.260 to 30.300, only the City, not an individual public employee, is a proper defendant under the second through fifth claims. And third, because Mr. Hanken was acting within the scope of his authority and for the benefit of his employer, he may not be held personally liable under the seventh claim, for tortious interference with contract. For the reasons discussed below, the Court grants Defendants' motion to dismiss.

Further, as explained below, the Court has reviewed sua sponte the § 1983 claims against the Doe Defendants and the City—claims that are the only foundation for the Court's subject-matter jurisdiction in this action. The Court finds deficiencies that require amendment to the first claim and therefore dismisses the first claim as to all Defendants. The Court grants Plaintiff leave to amend his complaint to correct these deficiencies.

**A.  § 1983 Claim**

Under 42 U.S.C. § 1983, any person who has suffered a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law may bring a civil action seeking redress. Such claims may be brought against individual public employees and against local government agencies, with distinct elements depending on the defendant. Mr. Hanken moves to dismiss the § 1983 claim against him. The Court's review of that motion raises doubts as to whether the remaining § 1983 claims against the Doe Defendants and the City of Scappoose also fail to state a claim—thus raising doubts as to Mr. Greisen's invocation of federal jurisdiction based on 42 U.S.C. §§ 1983, 1331

PAGE 6 – OPINION AND ORDER

and 1343. The Court has an obligation to review such questions, whether the parties so request or not. *See Mt. Healthy City Sch. Dist.*, 429 U.S. at 278.

### 1. Mr. Hanken and the Doe Defendants

To state a claim under § 1983 against an individual, a plaintiff must allege two essential elements: (1) the action occurred under color of law; and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right. *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)); s*ee also Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). As to the first element, a public employee generally acts under color of state law while acting in his official capacity. *McDade*, 223 F.3d at 1140 (citing *West v. Atkins*, 487 U.S. 42, 49-50 (1988)). As to the second element, "Section 1983 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred.'" *Broam*, 320 F.3d at 1028 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

Mr. Greisen's complaint alleges only that Defendants, collectively, have violated his "liberty and property interests" through their conduct. Dkt. 1, ¶¶ 4-12. He does not allege either essential element to state a claim under § 1983 as to Mr. Hanken. The complaint nowhere identifies any action specifically taken by Mr. Hanken under color of state law. (In fact, Mr. Hanken could not have been acting under color of state law at the time Mr. Greisen was terminated, having resigned from the city six months earlier.) Neither does Mr. Greisen identify any constitutional provision or federal statute that confers a right that was deprived through any action taken by Mr. Hanken. Accordingly, Mr. Greisen has failed to state a claim against Mr. Hanken under § 1983. The Court dismisses without prejudice and with leave to amend Mr. Greisen's first claim for relief as to Mr. Hanken.

Similarly, Mr. Greisen fails to state a claim against the Doe Defendants, and the § 1983 claim is dismissed without prejudice as to those unidentified individuals, as well. Even assuming

PAGE 7 – OPINION AND ORDER

the Doe Defendants were employees or agents of the City during the entire relevant time period, Mr. Greisen does not identify the actions they took "under color of state law." The complaint again fails to allege deprivation of rights conferred by an identified constitutional provision or federal statute. Further, as a general rule, the use of "John Doe" to identify defendants is disfavored in federal courts. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). In some situations, the identities of alleged defendants are unknown prior to filing the complaint, and the plaintiff "should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.; see also Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999); *Ouma v. Clackamas Cnty.*, 2013 WL 1834662, at *2 (D. Or. Apr. 30, 2013). Because the § 1983 claim as to the Doe Defendants is dismissed on other grounds (with leave to amend), the Court need not address whether the failure to identify the Doe Defendants is proper at this stage of the litigation.[1]

### 2. The City of Scappoose

To state a claim under § 1983 against a local government, a plaintiff must allege "that official policy is responsible for a deprivation of rights protected by the Constitution," whether

---

[1] The Court takes judicial notice of the Adopted Budget for Fiscal Year 2013-14 for the City of Scappoose ("City Budget"), which allocated the equivalent of 32 full-time employees among all city departments. The budget identifies 11 full-time staff in the largest City agency, the Police Department, roughly 11 additional employees in the water and wastewater departments, and only a handful of city officials engaged in centralized city operations: the city manager, finance administrator, city recorder, the city planner and office administrators. Given the disfavor in which the Court holds the use of Doe Defendants, and the limited field of possible City-employee Doe Defendants in this case, the Court will evaluate any amended § 1983 claim against Doe Defendants based on the *Gillespie* factors. Such defendants may be stricken by the Court sua sponte. *See, e.g.*, *Prods. & Leasing v. Hotel Conquistador, Inc.*, 573 F. Supp. 717, 725 (D. Nev. 1982) *aff'd sub nom. Prod. & Leasing, Ltd. v. Hotel Conquistador, Inc.*, 709 F.2d 21 (9th Cir. 1983) (citing *Craig v. United States*, 413 F.2d 854, 856 (9th Cir. 1969)). The City Budget is available on the City's website, at http://www.ci.scappoose.or.us/index.asp?SEC=C979419F-CD7A-4947-BA80-68254F65D5CA&Type=B_LIST (last visited on December 15, 2014).

PAGE 8 – OPINION AND ORDER

that policy has been adopted through the body's "official decision making channels" or is a matter of custom. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91, (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. *See also Long v. L.A.*, 442 F.3d at 1185 (holding that a municipality may be sued under § 1983 "only when execution of a government's policy or custom inflicts the injury"); *Dillon v. Clackamas Cnty.*, 2014 WL 6809772, at *3 (D. Or. Dec. 2, 2014) (holding that plaintiffs seeking to represent a class of inmates strip-searched sufficiently alleged violation of a "written or *de facto*" policy, although they did not identify the particular written policy or procedure).

Mr. Greisen fails to allege that any specific policy or custom of the City of Scappoose deprived him of a constitutional or statutory right. Lacking that "touchstone" of a § 1983 claim against a government body, *Monell*, 436 U.S. at 690, Mr. Greisen's first claim against the City fails and is dismissed without prejudice.

### 3. Effect on Subject-Matter Jurisdiction

Mr. Greisen's statement of subject-matter jurisdiction over this action—based on 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 1367 (supplemental)—depends entirely on the existence of a properly pled § 1983 claim. In this case, Mr. Greisen may be able to cure the jurisdictional defect as to Mr. Hanken or the Doe Defendants by amending the pleadings to allege facts sufficient to establish that they were (1) acting under color of state law and (2) violating specific constitutional or federal statutory rights. Similarly, Mr. Greisen may be able to cure the jurisdictional defect as to the City of Scappoose by specifying the city policy or custom he alleges caused the violation of his identified constitutional or statutory right. Thus, the Court does not dismiss the complaint for lack of subject-matter jurisdiction at this time.

## B. Oregon Tort Claims

Mr. Greisen's second through fifth claims raise allegations of torts covered by the Oregon Tort Claims Act ("OTCA"), ORS §§ 30.260 to 30.300. These include a violation of Oregon whistleblowing statutes, ORS §§ 659A.203 and 659A.199, and common-law torts of wrongful discharge, intentional infliction of emotional distress, and defamation. *See* ORS § 30.260(8) (defining a tort as the breach of a legal duty that is imposed by law, other than a contractually based duty); *Urban Renewal Agency of Coos Bay v. Lackey*, 275 Or. 35, 38 (1976) (holding that a legal duty under the OTCA may be imposed by common law or by statute).

The OTCA provides the "sole cause of action for any tort committed by officers, employees, or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification" by the public body. ORS § 30.265(2). The OTCA bars actions against individual tortfeasors acting within the scope of their public employment and provides that the court upon motion will substitute the public body as the sole defendant. ORS § 30.265(3). Individual tortfeasors may be defendants only if they are acting outside "the scope of their employment or duties." ORS § 30.265(1). *See also Brungardt v. Barton*, 69 Or. App. 440, 443.[2]

A public employee is acting within the scope of his or her employment if three elements are satisfied: (1) the act in question is of a kind the actor was engaged to perform, (2) the act occurred substantially within the authorized time and space, and (3) the actor was motivated, at

---

[2] Neither Mr. Greisen's Complaint nor his Opposition to Defendants' Motion to Dismiss mentions either of the other two statutory grounds for allowing a tort claim to proceed against an individual public employee. One is if the employee is sued for acts that amount to "malfeasance in office or willful or wanton neglect of duty." ORS §§ 30.285(2), 30.287(1). The second is if the OTCA action alleges damages greater than the OTCA's statutory damage cap, which for local public bodies such as the City of Scappoose is $633,300 for causes of action arising on or after July 1, 2013 and before July 1, 2014. ORS §§ 30.265(4), 30.272(2)(e).

least in part, by a motive to serve the employer. *Minnis v. Oregon Mutual Ins. Co.*, 334 Or. 191, 201 (2002). This motivation is a "question for the trier of fact, except in cases where only one reasonable conclusion may be drawn from the facts pled." *Fearing v. Bucher*, 328 Or. 367, 374 (1999). The Oregon Supreme Court has held that a jury could find a motive to serve the employer even in cases of a priest who alleged sexually abused a minor, *id.*, and a Boy Scout leader who allegedly sexual abused one of his charges, *Lourim v. Swensen*, 328 Or. 380 (1999).

Mr. Greisen concedes Defendants' motion to dismiss as to his second and third claims, whistleblowing and wrongful discharge, against Mr. Hanken. Pl.'s Opp'n. to Defs.' M. to Dismiss (Dkt. 14) at 2. The Court thus dismisses Plaintiff's second and third claims as to Mr. Hanken.

Mr. Greisen argues, however, that his fourth and fifth claims are based on actions either outside the course and scope of Mr. Hanken's employment as City Manager before his resignation on November 8, 2013, or upon Mr. Hanken's actions as a private individual after his resignation. *Id.* In support of this argument, Mr. Greisen cites *Dickens v. DeBolt*, 288 Or. 3, 10 (1979), which held that a state police officer did not act within the scope of his employment—and thus was not entitled to immunity—when he ate a filet of a sturgeon he had seized from a fisherman when enforcing state game laws. Mr. Greisen states that he anticipates evidence at trial of Mr. Hanken's tortious conduct similarly outside of the course and scope of his employment.

It is not enough for a plaintiff to argue that the facts will emerge at trial; the complaint must provide "sufficient allegations of underlying facts," *Starr*, 652 F.3d at 1216, to give "fair notice of what petitioner's claims are and the grounds upon which they rest." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (citation and quotation marks omitted). Pleadings are

PAGE 11 – OPINION AND ORDER

"intended . . . to frame the issue and provide the basis for informed pretrial proceedings." *Bautista v. L.A. Cnty.*, 216 F.3d 837, 841 (9th Cir. 2000).

Mr. Greisen's Complaint cites only the following allegations of fact as to Mr. Hanken's conduct: Mr. Hanken (and others) subjected everything Mr. Greisen had done to "rigorous, exacting, predisposed, and prejudiced scrutiny," Compl. at Intro.; Mr. Hanken initiated disciplinary complaints, allegedly in bad faith, *id.*; he forbade Mr. Greisen from public parks and buildings, *id.*; and Mr. Hanken leaked misleading information about Mr. Greisen, *id*. Along with other Defendants, Mr. Hanken is alleged to have released "skewed" information to news reporters and to have provided Mr. Greisen's confidential home address. Compl. ¶ 10. The factual allegations in the Complaint are deficient in providing specifics, including offering approximate dates of the conduct alleged.

Even drawing all reasonable inferences in favor of the plaintiff, the factual allegations in the Complaint do not support Mr. Greisen's current contention that the conduct alleged falls outside the scope of Mr. Hanken's employment. The specific type of conduct in question—supervising, investigating and disciplining employees, "banishing" a disciplined employee from City property, and releasing City-gathered information to reporters—falls within the scope of responsibility of a city manager, and indeed, would seem to require the authority of such an official position to carry out. There is no factual allegation in the Complaint that Mr. Hanken pursued any of this conduct as a private citizen on his own time or outside the scope of his public duties, and the Complaint does not place any of these activities by Mr. Hanken after the date when Mr. Hanken left the City's employ. The pervasive theme in the Complaint, in which most claims are made generally against *all* Defendants, is that Mr. Hanken was working as an employee and agent of the City and in collaboration with other individuals, the Doe Defendants,

PAGE 12 – OPINION AND ORDER

who were similarly acting at least in part in their official capacity. The acts in question appear to be of a kind that Mr. Hanken was engaged to perform, they occurred substantially within the authorized time and space of his employment, and Mr. Hanken was at least in part motivated to serve the City, his employer. The Oregon Tort Claims Act requires these claims to be brought against the City alone.

For these reasons, the Court dismisses without prejudice Mr. Greisen's fourth and fifth claims for relief as to Mr. Hanken. If Mr. Greisen seeks to amend his complaint to allege these claims, he must make specific factual allegations that would allow the Court to draw a reasonable inference that Mr. Hanken's conduct was outside the scope of his employment.

## C.  Tortious Interference with Contract

Mr. Greisen also contends that Mr. Hanken's conduct that allegedly interfered with Mr. Greisen's employment with the City falls outside the scope of Mr. Hanken's employment with the City.[3] An employee is generally shielded from liability for interference with economic relations between the employer and other individuals, "so long as the employee is acting within the scope of his employment" and for the employer's benefit. *Wellington v. Lane Cnty.*, 2009 WL 2252100, at *3 & n.2 (D. Or. July 27, 2009). As discussed above, the Complaint contains no factual allegations that would allow the Court reasonably to infer that Mr. Hanken's acts fell outside the scope of his employment, nor that any of the acts in question occurred after his November 2013 resignation. Further, the Complaint must allege facts allowing a reasonable

---

[3] To state a claim for the tort of intentional interference with economic relations, a plaintiff must allege each of the following elements: (1) the existence of a professional or business relationship; (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and (6) damages. *Allen v. Hall*, 328 Or. 276, 281 (1999).

PAGE 13 – OPINION AND ORDER

inference that any relevant acts outside the scope of employment actually caused the City to terminate Mr. Greisen's employment. *See Allen v. Hall*, 328 Or. 276, 286 (1999) ("To state a claim, plaintiffs also must allege facts that establish a causal relationship between the interference and the loss of the prospective advantage.").

Mr. Greisen's Complaint does not contain the specific factual allegations that would support a claim for intentional interference with economic relations against Mr. Hanken. The Court dismisses without prejudice and with leave to amend Mr. Greisen's seventh claim for relief.

## CONCLUSION

The Court GRANTS without prejudice Defendants' Motion to Dismiss (Dkt. 13) all claims against Defendant Hanken and further DISMISSES without prejudice Plaintiff's claim under 42 U.S.C. § 1983 against the City of Scappoose and the Doe Defendants. Plaintiff has leave to amend his complaint within 30 days.

**IT IS SO ORDERED**.

DATED this 5th day of January, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge