**John D. Ostrander, OSB No. 87394**, john@eoplaw.com
**William A. Drew, OSB No. 95253**, bill@eoplaw.com
ELLIOTT, OSTRANDER & PRESTON, P.C.
707 SW Washington Street, Suite 1500
Portland, Oregon 97205
Telephone:  (503) 224-7112
Facsimile:  (503) 224-7819

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **DOUG GREISEN**, an individual, | |
| **PLAINTIFF**, | Case No. 3:14-cv-01399-SI |
| v. | **PLAINTIFF'S TRIAL MEMORANDUM** |
| **JON HANKEN**, an individual, **JOHN DOES 1-5**, and **CITY OF SCAPPOOSE**, an Oregon municipality, | |
| **DEFENDANTS**. | |

## INTRODUCTION

This 42 U.S.C. § 1983 claim is brought by the former Chief of Police for the City of Scappoose, Plaintiff Doug Greisen, against the former City Manager for the City of Scappoose, Defendant Jon Hanken.  To prevail, Plaintiff must show, by a preponderance of the evidence, that Plaintiff (1) engaged in speech protected by the First Amendment, regarding budget and finance matters, and (2) that his speech was a substantial and motivating factor in any of the adverse employment actions taken against Plaintiff by

Page 1 – PLAINTIFF'S TRIAL MEMORANDUM

**ELLIOTT, OSTRANDER & PRESTON, P.C.**

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com

Hanken, (3) that Hanken was acting under color of state law when he initiated the adverse action, and (4) damages.

Plaintiff will present evidence of his protected speech, and direct and circumstantial evidence of Hanken's motivation for the adverse employment actions taken against Plaintiff after that protected speech. It is not disputed that Hanken acted under color of state law when he imposed the adverse employment actions. It also should be established, as a matter of law, that speech related to City finances and the budget is a matter of public concern. The issues for trial should be: (1) whether Greisen was acting as a private citizen and not as Chief of Police when he asked about the City's finances, (2) whether the protected speech was a substantial and motivating factor in the adverse employment actions that followed, and (3) damages.

## STATEMENT OF FACTS

In 2012, Plaintiff Doug Greisen began asking questions about the City budget and finances to Defendant Hanken. Mr. Greisen's inquiries were not well received, and he was warned by Defendant Hanken that he must stop asking questions and stop talking to others about financial matters. When Mr. Greisen persisted, Defendant Hanken retaliated by initiating three disciplinary investigations. The first arose out of Mr. Greisen's successful February 4, 2013 apprehension of a "deranged" felon named Bickmore ("Arrest Investigation"). The second involved alleged workplace harassment ("Harassment Investigation"). The third involved the alleged "discovery" of an unauthorized charity account, kept locked in Plaintiff's desk drawer ("Charity Account

Page 2 – PLAINTIFF'S TRIAL MEMORANDUM

**ELLIOTT,
OSTRANDER &
PRESTON, P.C.**

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com

Investigation"). Hanken enhanced the negative effects of these adverse employment actions by suspending Plaintiff from his duties, barring Plaintiff from City property, banning him from speaking to the press, and by making press releases and interviews with the press to announce the allegations and suspensions, without permitting Plaintiff to respond (and without informing the press that Plaintiff was under order not to respond).

Based on the Arrest Investigation, Defendant Hanken disciplined Plaintiff with a two week suspension. In Hanken's August 23, 2013 Notice of Discipline ("NOD"), he issued a veiled threat to Plaintiff: "I cannot help but wonder if you would be able to maintain your position if this report was known by or reported to the news media." His was not a remote or merely theoretical threat as Defendant Hanken admits to making it a regular part of his job to foster and develop good media connections.

Mr. Greisen disagreed with the report and the discipline imposed by Hanken, so he appealed to the NOD. A Personnel Review Committee ("PRC") was selected at random from City Councilors and the City Attorney, which thoroughly reviewed the investigation, evidence, and findings. At least two of the three City Councilors appointed to the randomly selected appeal review committee are expected to testify that Defendant Hanken threatened that he would treat them differently if the review committee did not affirm the NOD.

Within days of the date that Plaintiff filed his appeal, Defendant Hanken initiated the Harassment Investigation against Greisen, barred him from all City property and ordered him not to speak to the press. Having gagged Greisen, Hanken spoke to the press

Page 3 – PLAINTIFF'S TRIAL MEMORANDUM

**ELLIOTT, OSTRANDER & PRESTON, P.C.**

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com

about Plaintiff's two week suspension for ten violations of police policy and of Plaintiff's continued suspension pending investigation of multiple harassment charges.

The first investigation report (for which Plaintiff was disciplined) was eventually found to be "untrustworthy" and "null and void" by the PRC. On the same day that the PRC wrote that the Arrest Investigation Report was a "prosecutorial document calculated to achieve a desired end," Defendant Hanken called City Councilors to tell them he would be leaving Scappoose and commenced a third investigation against Plaintiff. This time the investigation was of an already well known discretionary charity account that consisted of money held in the Police Chief's desk.

Shortly after the third investigation was launched, Plaintiff was humiliated on T.V. when a KOIN 6 news team obtained Plaintiff's private home address (which Plaintiff had expressly requested be maintained confidential per documents in his personnel file) and reported on the pending investigations "live" from outside his home. A significant part of that news story was the dramatic attempt by the reporter to talk to Plaintiff, who "refused to come out", which the media insinuated was because of his guilt. In fact, Plaintiff was dutifully following the gag order, imposed on him by the City.

On November 13, 2013, the investigator for the Harassment Investigation delivered his completed report to the City. The report exonerated Plaintiff from virtually all charges (the only exception being a charge that Plaintiff had failed to provide a formal review of his second in command on an annual basis). The conclusions in the report were pocketed; and were never disclosed to the press. The report was not provided to

Page 4 – PLAINTIFF'S TRIAL MEMORANDUM

ELLIOTT, OSTRANDER & PRESTON, P.C.

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com

Plaintiff until long after this lawsuit was filed.

Rather than release the (exonerating) results of the Second Investigation to the press, Hanken doubled down on his reporting of the Third Investigation to the press. While that investigation was still underway, Hanken invited the media in to City Hall, and reported (falsely) that while Plaintiff was on suspension, the acting chief "discovered" an "unauthorized" account in Plaintiff's desk. For maximum impact, Defendant Hanken gave the press access to the actual money, and allowed them to spread it out on display on a desk for an "above the fold" front page news story on November 15, 2013. The story also was widely disseminated through the Internet, where the photograph of the actual money – displayed in a manner reminiscent of a drug forfeiture photo – took on a life of its own.

Defendant Hanken destroyed Plaintiff's reputation. From that point on, there was no chance for him to recover or retain his dignity as Chief of Police. The adverse press took its natural course, and Plaintiff was terminated in the following spring for "no cause." In this day of Internet media, the destruction of Plaintiff's image and reputation has not been confined. He cannot find a similar job anywhere in the country. In fact, he did find one job only to lose it at the last moment because the potential employer did a final "Google" search and came across the story. Plaintiff has barely been able to secure any employment, although he has been able to pick up some part-time work.

Page 5 – PLAINTIFF'S TRIAL MEMORANDUM

ELLIOTT, OSTRANDER & PRESTON, P.C.

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com

## CHRONOLOGY OF EVENTS

The following is a chronological summary of evidence in this case.

| Date | Event |
|---|---|
| **November 2012** | Greisen named "Top Cop" of Columbia County in "Spotlight Reader's Choice" poll. |
| **Winter 2012-13** | Greisen inquires about City finances and budget, and is told to stay on his side of City Hall. |
| **2-4-13** | Successful Apprehension / Arrest of Bickmore. |
| **7-31-13** | Hanken commences First Investigation regarding Bickmore Apprehension / Arrest through LGPI; Initial gag order regarding Arrest Investigation. |
| **8-23-13** | Hanken issues Notice of Discipline to Greisen for Arrest Investigation; initial two week suspension from service. |
| **8-26-13** | Greisen Appeals of Notice of Discipline. |
| **9-5-13** | Hanken contacts Aaron Olson at LGPI and commences Second Investigation (Harassment). |
| **9-6-13** | Hanken issues Exclusionary order banning Greisen from City property. |
| **9-6-13** | Hanken speaks to press about two week suspension as "second probe gets underway." |
| **9-9-13** | Hanken continues Greisen's (indefinite) suspension from service pending Second Investigation. |
| **9-9-13** | City (through City Attorney) issues Gag order banning Greisen from communicating with the media on any topic. |
| **9-30-13** | Internal commencement of Third Investigation; supplemental gag order. |
| **10-14-13** | PRC Report finds LGPI Arrest Investigation "purposefully omitted pertinent and material facts" and said it was a "prosecutorial |

Page 6 – PLAINTIFF'S TRIAL MEMORANDUM

**ELLIOTT, OSTRANDER & PRESTON, P.C.**

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com

|          |                                                                                                                                                                                   |
|----------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|          | document that was colored to arrive at a predetermined result," "null and void" and "untrustworthy."                                                                              |
| 10-14-13 | Hanken learns of PRC report and tells city councilors that he will be resigning soon. Hanken contacts LGPI requesting that it commence the Third (Financial) Investigation against Greisen.. |
| 11-5-13  | KOIN 6 news story aired from Greisen's private home.                                                                                                                              |
| 11-13-13 | LGPI's Second (Harassment) Investigation Report exonerates Greisen. Conclusions are withheld from press and Greisen.                                                              |
| 11-15-13 | Hanken quoted in newspaper article regarding "discovery" of bank bag of charity funds held in Chief Police's locked desk before investigation is complete. Drug bust photo.       |
| 12-16-13 | Greisen's asks to return to service; seeks a copy of Second (Harassment) Investigation report.                                                                                    |
| 1-16-14  | Greisen's asks again to return to service; seeks a copy of Second (Harassment) Investigation report.                                                                              |
| 4-8-14   | Greisen's employment terminated "not for cause."                                                                                                                                  |
| 6-12-15  | Harassment Investigation report finding harassment and retaliation charges "unfounded" is released to Mr. Greisen in discovery.                                                   |

## LAW AND LEGAL STANDARDS

**1. Plaintiff's Section 1983 Claim.**

Section 1983 creates a private right of action against individuals who, acting under color of law, violate federal constitutional or statutory rights.

A person acts "under color of law" when the person acts or purports to act in the performance of their official duties for a government body. Plaintiff anticipates no dispute that Defendant Hanken's acts were under color of state law since they were

Page 7 – PLAINTIFF'S TRIAL MEMORANDUM

ELLIOTT, OSTRANDER & PRESTON, P.C.

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com

clearly performed in his capacity as City Manager, on behalf of the City. As a result, before instructing the jury, the Court should rule that the acts of Defendant Hanken were under color of state law, and instruct the jury that he is directly liable to Plaintiff for any deprivation of his Constitutional rights

To prove a violation of his First Amendment rights, Plaintiff must show that: (1) he spoke on a matter of public concern (i.e. the speech was protected speech); (2) he spoke as a private citizen and not as part of his official duties; and (3) the speech was a substantial or motivating factor in an adverse employment action. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2008). *See also Heffernan v. City of Paterson*, 578 U.S. __ (April 26, 2016)

Plaintiff seeks damages against Defendant Hanken both for his "direct" adverse employment actions (suspension, serial public investigations, bans from public property, and a gag order, while subjecting Plaintiff to continuing criticism in the press, and failing to set the record straight), as well as the natural consequences of those actions (Plaintiff's eventual termination). *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (finding supervisor liability if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them.")

    i.  **Matters of Public Concern.**

The "public concern inquiry is purely a question of law." *Gibson v. Office of Atty.Gen., State of California*, 561 F.3d 920, 925 (9th Cir. 2009); *Connick v. Myers*, 461 U.S. 138, n. 7, 103 S. Ct. 1684 (1983) ("The inquiry into the protected status of speech is

Page 8 – PLAINTIFF'S TRIAL MEMORANDUM

**ELLIOTT, OSTRANDER & PRESTON, P.C.**

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com

one of law, not fact."). "A matter of public concern" is a matter that fairly relates to political, social or other aspects of the community. *Connick*, 461 U.S. at 146. The Ninth Circuit has specifically held that "[u]nlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern." *Thomas v. City of Beaverton*, 379 F.3d 802, 809 (9th Cir. 2004). Budget practices and allocation of public resources have also been held to be matters of public concern. *Pickering v. Board of Education*, 391 U.S. 563, 571-72, 88 S. Ct. 1731 (1968) (teacher could not be terminated for openly criticizing allocation of school funds in the budget, which was protected speech on a matter of public concern).

Plaintiff requests the Court to rule before trial or prior to instructing the jury that Plaintiff's complaints and inquiries into financial matters were on a matter of public concern, as a matter of law. Because Plaintiff's lawsuit relates to potential government corruption, there is no question that Plaintiff's speech was on a matter of public concern.

### ii. Speech as Private Citizen.

Communications to individuals or entities outside the chain of command make it unlikely that a police officer employee is speaking pursuant to his official duties. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1074 (9th Cir. 2013). In contrast, when a public employee raises complaints up the chain of command about his workplace, that speech is often undertaken in the course of performing his or her job. *Id.* If the public employee takes his concerns outside the workplace the "external communications are ordinarily not made as an employee, but as a citizen." *Id*. Further, the substance of the activity matters, too.

Page 9 – PLAINTIFF'S TRIAL MEMORANDUM

ELLIOTT, OSTRANDER & PRESTON, P.C.

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com

For example, if one raises "broad concerns about corruption or systemic abuse, it is unlikely that such complaints can reasonably be classified as being within the job duties of an average public employee, except when the employee's regular job duties involve investigating such conduct, e.g. when the employee works for Internal Affairs or another such watchdog unit." *Id*. at 1075.

Here, Plaintiff was a police chief, not an internal affairs officer. His protected speech related to his investigation into potential budget / finance and public corruption issues. There is little question that his inquiries and speech were made as a citizen and not as part of his official job duties. To that end, it is telling that Plaintiff's statements / inquiries were made in direct contravention to Defendant Hanken's orders. At the conclusion of the evidence, Plaintiff anticipates moving the Court for a judgment as a matter of law under F.R.C.P. 50 because there will be no legally sufficient evidentiary basis for a jury finding against Plaintiff on this element of his First Amendment claim.

### iii. Resulting Adverse Employment Action.

Causation for purposes of the First Amendment means a "substantial or motivating factor or, in other words, a "significant factor." *See* Ninth Circuit Civil Jury Instruction 9.9. Here, the evidence will show that Defendant Hanken took no adverse action against Plaintiff until Plaintiff started asking the finance staff and City Councilors about budgetary and financial matters. Hanken's direct action in response to those inquiries (browbeating; telling him to stay on "his side of City Hall"), together with Hanken's commencement of three investigations, his exclusionary and gag orders, and his own

Page 10 – PLAINTIFF'S TRIAL MEMORANDUM

ELLIOTT, OSTRANDER & PRESTON, P.C.

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com

press releases, support Plaintiff's showing of causation. Defendant Hanken's motives will be shown by direct and circumstantial evidence. Hanken directly warned Plaintiff that he might not keep his job if the first investigation report was reported to the press. He directly confronted City Councilors about how they should decide the appeal of the NOD. Those direct actions, and indirect threats, support causation. *See Heyne v. Caruso*, 69 F.3d 1475, 1482 (9th Cir. 1995) (reversing the district court for excluding evidence of others who engaged in similar protected conduct). Causation is even more apparent in the light of the circumstantial evidence, such as the timing of the events (set forth above). The timing and sequence of Defendant Hanken's actions indicate that he escalated the adverse action against Greisen when Greisen appealed or resisted punishment, and when an investigation was found to be prosecutorial, or unfounded. He compounded the adverse employment actions by unfairly speaking to the press, while Plaintiff was prohibited from presenting any defense or explanation for the allegations and investigations.

### 2. Damages.

A person violating Section 1983 "shall be liable to the party injured in an action at law, suit or equity, or other proper proceeding for redress." 42 U.S.C. § 1983. Damages under Section 1983 are determined by the compensation principle. That is, a plaintiff is entitled to recover compensation for the injury caused to plaintiff by defendant's breach of duty. *Carey v Piphys*, 435 U.S. 247, 255, 98 S. Ct. 1042 (1978). When a §1983 plaintiff seeks damages for violations of constitutional rights, "the level of damages is

Page 11 – PLAINTIFF'S TRIAL MEMORANDUM

ELLIOTT, OSTRANDER & PRESTON, P.C.

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com

ordinarily determined according to principles derived from the common law of torts." *Memphis Community School District v Stachura*, 477 U.S. 299, 306, 106 S. Ct. 2537 (1986).

A plaintiff who establishes liability under 42 U.S.C. § 1983 is entitled to recover for all compensatory damages. Compensatory damages include "not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment to reputation ….personal humiliation, and mental anguish and suffering.'" *Memphis Community School District*, 477 U.S. at 307; *see also Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir.1988) (same). A jury should be instructed to compensate a prevailing plaintiff for both all monetary and nonmonetary harms caused by the defendant's conduct. *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996). The prevailing plaintiff is also entitled to reasonable attorneys' fees. 42 U.S.C. §1988; *Bauer v. Sampson*, 261 F.3d 775, 785 (9th Cir. 2001).

## CONCLUSION

The Court should instruct the jury that Plaintiff's questions about the City's budgeting and finance policies and practices constituted speech on a matter of public concern under the First Amendment, and that Mr. Hanken was, at all relevant times, acting under color of state law. The principal issues for resolution at trial should be (1) whether Plaintiff's speech was performed as a private citizen, outside of the scope of his normal duties as Police Chief, and (2) whether Plaintiff's speech was a "substantial or motivating factor" in the following investigations and other adverse employment

ELLIOTT, OSTRANDER & PRESTON, P.C.

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com

actions initiated by Defendant as City Manager, and (3) the damages suffered by Plaintiff.

DATED this 10th day of June, 2016.

                        ELLIOTT, OSTRANDER & PRESTON, P. C.


                        By:   /s/ John D. Ostrander
                            John D. Ostrander, OSB #87394
                            john@eoplaw.com
                            (503) 224-7112
                            (503) 224-7819 fax
                            Of Attorneys for Plaintiff

Page 13 – PLAINTIFF'S TRIAL MEMORANDUM

**ELLIOTT, OSTRANDER & PRESTON, P.C.**

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com

# CERTIFICATE OF SERVICE

I hereby certify that I served the attached **PLAINTIFF'S TRIAL MEMORANDUM** on:

Karen M Vickers
Mersereau Shannon LLP
1 SW Columbia St Ste 1600
Portland OR  97258
kvickers@mershanlaw.com

[ ]    by mailing to said attorney(s) a full and correct copy therefor, contained in a sealed envelope, with postage paid, addressed to said attorney(s) as stated above and deposited in the United States Post Office at Portland, Oregon.

[X]    by hand delivering to said attorney(s) a true copy thereof.

[ ]    by faxing to said attorney(s) a true copy thereof.

[ ]    by emailing to said attorney(s) a true copy thereof.

[X]    by electronic filing with the Court's CM/ECF system.  The CM/ECF system generated Notice of Electronic Filing constitutes proof of service upon a Filing User in accordance with Fed. R. Civ. P. 5(d).

Dated this 10th day of June, 2016

ELLIOTT, OSTRANDER & PRESTON, P.C.

By:    /s/ John D. Ostrander
John D. Ostrander, OSB #87394, john@eoplaw.com
(503) 224-7112
(503) 224-7819 fax
    Of Attorneys for Plaintiff

Page 14 – PLAINTIFF'S TRIAL MEMORANDUM

**ELLIOTT, OSTRANDER & PRESTON, P.C.**

UNION BANK TOWER
707 SW WASHINGTON STREET, SUITE 1500
PORTLAND, OR 97205
TELEPHONE (503) 224-7112
FACSIMILE (503) 224-7819
email: attorneys@eoplaw.com