**KAREN M. VICKERS,** OSB No. 913810
kvickers@mershanlaw.com
**BLAKE H. FRY,** OSB No. 100128
bfry@mershanlaw.com
MERSEREAU SHANNON LLP
One SW Columbia Street, Suite 1600
Portland, Oregon 97258-2089
Telephone: 503.226.6400
Facsimile: 503.226.0383

        Of Attorneys for Defendant Jon Hanken

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DOUG GREISEN, an individual, | Case No. 3:14-cv-01399-SI |
| Plaintiff, | |
| v. | DEFENDANT HANKEN'S REPLY TO RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND ALTERNATIVE MOTIONS FOR NEW TRIAL AND REMITTITUR |
| JON HANKEN, an individual, JOHN DOES 1-5, and CITY OF SCAPPOOSE, an Oregon municipality, | |
| Defendants. | |

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ..........................................................................................................1

ARGUMENT ................................................................................................................2

I.      TIMELINE ...........................................................................................................2

II.     MOTION FOR JUDGMENT AS A MATTER OF LAW ...........................................3

     a.    Plaintiff did not prove he engaged in protected speech ...............................3

         i.   August 26, 2013: Plaintiff's appeal of his own discipline is not protected speech ....4

         ii.  Unspecified and pre-May 2012: Ms. Ingham's request to hire an additional police officer ............................................................................................4

         iii. Pre-May 2012, unspecified 2012, spring 2013: Questions to Ms. Herr about unpaid police department invoices ........................................................6

         iv. September 20, 2013: PRC interview ..........................................................8

     b.    Plaintiff did not prove that Hanken knew about his speech ...........................8

         i.   Plaintiff did not prove Hanken knew about pre-May 2012 budget meeting discussions ......................................................................................9

         ii.  Plaintiff did not prove Hanken knew about questions regarding invoices, "the budget" generally, or financial accounting principles or audits ...........11

         iii. Plaintiff did not prove Hanken knew about his comments during the PRC interview. ......................................................................................13

     c.    Plaintiff did not prove that his speech caused an adverse employment action .............14

         i.   Proximity: The time gap between plaintiff's speech and the adverse actions at issue is too large to infer causation. ......................................................15

         ii.  Opposition: Plaintiff did not prove Hanken expressed opposition to *plaintiff's protected* speech ..................................................................................16

iii. Pretext: Nothing in the record suggests that Hanken's explanations for the adverse actions he took were false or pretextual.................................................17

    1. PIT Investigation........................................................................18

    2. Hostile Work Environment Investigation ............................................19

    3. Paid Administrative Leave.............................................................20

    4. Financial Investigation.................................................................20

d. Plaintiff did not prove that Hanken caused his termination.............................21

e. Hanken is entitled to qualified immunity.................................................23

III. MOTION FOR NEW TRIAL OR REMITTITUR ..............................................28

a. The jury's award of damages was excessive. ............................................28

b. Plaintiff did not prove that he engaged in protected speech. ..........................30

c. Admitting evidence regarding the police department budget substantially prejudiced Hanken .................................................................................32

d. Mr. Bickmore's mugshots substantially prejudiced Hanken. ...........................32

CONCLUSION.........................................................................................33

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

TABLE OF AUTHORITIES

FEDERAL CASES

*Allen v. Scribner*,
812 F.3d 246 (9th Cir. 1987) ........................................................................ 17

*Alpha Energy Savers v. Hansen*,
381 F.3d 917 (9th Cir. 2004) ........................................................................ 8

*Anderson v. Creighton*,
483 U.S. 635 (1987).............................................................................. 23, 24

*Anthoine v. N.C. Cos. Consortium*,
605 F.3d 740 (9th Cir. 2010) ........................................................................ 5

*Ashcroft v. al-Kidd*,
131 S. Ct. 2074 (2011)................................................................................ 24

*Bartlett v. Fisher*,
972 F.2d 911 (8th Cir. 1992) ...................................................................... 26

*Boyd v. Benton County*,
374 F.3d 773 (9th Cir. 2004) ...................................................................... 24

*Brewster v. Board of Education*,
149 F.3d 971 (9th Cir. 1998) ................................................................ 25, 26

*Brownfield v. City of Yakima*,
612 F.3d 1140 (9th Cir. 2010) ...................................................................... 4

*Bullington v. United Airlines, Inc.*,
186 F.3d 1301 (10th Cir. 1999) .................................................................. 18

*Campbell v. Galloway*,
483 F.3d 258 (4th Cir. 2007) ...................................................................... 25

*Carmen v. San Francisco Unified Sch. Dist.*,
237 F.3d 1026 (9th Cir. 2001) .................................................................... 10

*City of San Diego v. Roe*,
543 U.S. 77 (2004)...................................................................................... 25

///

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

*Conner v. Heiman*,
  672 F.3d 1126 (9th Cir. 2012) ...................................................................... 27

*Connick v. Myers*,
  461 U.S. 138 (1983)....................................................................... 4, 5, 17

*Coomes v. Edmonds Sch. Dist. No. 15*,
  816 F.3d 1255 (9th Cir. 2016) ....................................................................... 6

*Dahlia v. Rodriguez*,
  735 F.3d 1060 (9th Cir. 2013) ..................................................................... 20

*Desrochers v. City of San Bernardino*,
  572 F.3d 703 (9th Cir. 2009) ........................................................................ 5

*Dominguez-Curry v. Nevada Transp. Dept.*,
  424 F.3d 1027 (9th Cir. 2005) ..................................................................... 17

*Endicott v. Deschutes Cnty*,
  2015 WL 853091 (D. Or. Feb. 26, 2015)........................................................ 4

*Eng v. Cooley*,
  552 F.3d 1062 (9th Cir. 2009) ....................................................................... 8

*Engquist v. Oregon Dept. of Agriculture*,
  553 U.S. 591 (2008)..................................................................................... 27

*Erickson v. Pierce Cnty.*,
  960 F.2d 801 (9th Cir. 1992) ....................................................................... 15

*Fox v. Traverse Area Public Sch. Bd. of Educ.*,
  605 F.3d 345 (6th Cir. 2010) ......................................................................... 6

*Gilbrook v. City of Westminster*,
  177 F.3d 839 (9th Cir. 1999) ....................................................................... 21

*Gotthardt v. National Railroad Passenger Corp.*,
  191 F.3d 1148 (9th Cir. 1999) ..............................................................................

*Gregorich v. Lund*,
  754 F.3d 410 (7th Cir. 1995) ....................................................................... 26

*Harper v. City of Los Angeles*,
  533 F.3d 1010 (9th Cir. 2008) ............................................................... 28, 29

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

*Hope v. Pelzer,*
    536 U.S. 730 (2002)................................................................ 24

*Jamal v. Wilshire Mgt. Leasing Corp.,*
    320 F. Supp.2d 1060 (D. Or 2004) ................................. 15

*Keyser v. Sacramento Unified Sch. Dist.,*
    265 F.3d 741 (9th Cir. 2001) ....................................... 16

*Lakeside-Scott v. Multnomah Cnty.,*
    556 F.3d 797 (9th Cir. 2009) ............................... 14, 21, 22

*Lewis v. Cowen,*
    165 F.3d 154 (2d Cir. 1999).......................................... 26

*Lytle v. Wondrash,*
    182 F.3d 1083 (9th Cir. 1999) ..................................... 26

*Manatt v. Bank of Am.,*
    339 F.3d 792 (9th Cir. 2003) ....................................... 15

*McVey v. Stacy,*
    157 F.3d 271 (4th Cir. 1998) ....................................... 26

*Norris v. City and Cnty of San Francisco,*
    900 F.2d 1326 (9th Cir. 1990) ................................. 18, 19

*Noyola v. Texas Dept. of Human Resources,*
    846 F.3d 1021 (5th Cir. 1988) ..................................... 26

*Nunez v. City of Los Angeles,*
    147 F.3d 867 (9th Cir. 1998) ....................................... 21

*O'Connor v. Cnty of Clackamas,*
    2013 WL 3818143 (D. Or. July 22, 2013)....................... 13

*Odermatt v. Way,*
    2016 WL 3034481 (E.D.N.Y. May 25, 2016) ................... 14

*Pickering v. Bd. Of Education,*
    391 U.S. 563 (1968)..................................................... 26

*Poland v. Chertoff,*
    494 F.3d 1174 (9th Cir. 2007) ..................................... 22

*Pool v. VanRheen*,
  297 F.3d 899 (9th Cir. 2002) ........................................................ 26

*Raad v. Fairbanks North Star Borough Sch. Dist.*,
  323 F.3d 1185 (9th Cir. 2003) ...................................................... 13

*Reza v Pearce*,
  806 F.3d 497 (9th Cir. 2015) ........................................................ 23

*Robinson v. York*,
  566 F.3d 817 (9th Cir. 2009) .......................................................... 8

*Roe v. City and Cnty. of San Francisco*,
  109 F.3d 578 (9th Cir. 1997) .......................................................... 5

*Schwartzman v. Valenzuela*,
  846 F.2d 1209 (9th Cir. 1988) ................................................. 16, 17

*Stanley v. City of Dalton*,
  219 F.3d 1280 (11th Cir. 2000) .................................................... 26

*Torres v. City of Los Angeles*,
  548 F.3d 1197 (9th Cir. 2008) ...................................................... 27

*Vasquez v. Cnty of Los Angeles*,
  349 F.3d 637 (9th Cir. 2003) ........................................................ 15

*Villarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002) ................................................. 15-17

*Wasson v. Sonoma County Junior College*,
  203 F.3d 656 (9th Cir. 2012) .......................................................... 4

## STATE CASES

*ACLU v. City of Eugene*,
  360 Or. 269 (2016) ......................................................................... 4

*City of Portland v. Anderson*,
  163 Or. App. 550 (1999) ................................................................ 4

*Ridenour v. Kuker*,
  175 N.W.2d 287 (Neb. 1970) ........................................................ 29

PAGE vi -    TABLE OF AUTHORITIES

## INTRODUCTION

Plaintiff Doug Greisen ("plaintiff") brought a First Amendment retaliation claim against Defendant Jon Hanken ("Hanken"). Hanken is the former city manager for the City of Scappoose ("City"). Plaintiff is the former chief of police. The events that give rise to this lawsuit relate to Hanken's decision to hire an independent agency to investigate plaintiff's policy violations. Specifically, Hanken engaged the Local Government Personnel Institute ("LGPI") to investigate plaintiff's decision to order a subordinate police officer to "PIT" a suspect fleeing the scene of a non-injury hit and run collision. As reported to Hanken, when plaintiff gave the order, the suspect was traveling 55 miles per hour. Executing a PIT maneuver at this speed can be considered deadly force. Plaintiff contends that Hanken's decision to engage an outside agency to conduct the investigation was retaliatory, notwithstanding that Hanken's decision was based on the recommendation of the City's second highest ranking police officer, then Lieutenant now Chief Norman Miller ("Lt. Miller").

Plaintiff's sole claim is for an alleged violation of the First Amendment. To have a claim, plaintiff was required to present evidence from which a reasonable jury could find Hanken retaliated against him for engaging in protected speech. Because he did not do so, Hanken requests that the court grant judgment in his favor. Alternatively, Hanken requests that the court grant him a new trial or remit the damages award.

///

///

///

PAGE 1 -    REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

## ARGUMENT

### I.    TIMELINE

To assist in the resolution of this motion, Hanken sets forth the timeline of relevant

events:

| | |
|---|---|
| **2000** | Plaintiff becomes interim Chief of Police.  (Tr. Plt. 67:6-9)[1] |
| **2001** | Plaintiff becomes Chief of Police.  (*Id.*) |
| **2003** | Hanken becomes interim City Manager.  (Tr. Plt. 114:15-19)[2] |
| **2004** | Hanken becomes City Manager.  (*Id.*) |
| **May 14, 2012** | Scappoose Budget Committee Meeting (Tr. Plt. 71:9-19) |
| **February 4, 2013** | PIT Maneuver (Tr. Plt. 79:6-9)[3] |
| **May 30, 2013** | Lt. Miller requests that Hanken engage the Oregon State Police to investigate PIT maneuver.  (Ex. 201; Tr. 123:14-18) |
| **July 17, 2013** | Hanken notifies plaintiff that the City will engage LGPI to investigate the PIT maneuver.  (Ex. 33; Tr. Plt. 123:19-24) |
| **August 1, 2013** | Hanken notifies plaintiff that the City will engage LGPI to investigate potential hostile work environment.  (Ex. 34; Tr. 126:23-127:14) |
| **August 23, 2013** | Hanken issues plaintiff a two week suspension.  (Ex. 35) |
| **August 26, 2013** | Plaintiff appeals his two week suspension.  (Ex. 37; Tr. 91:12-16) |
| **September 3, 2013** | The City's Personnel Review Committee ("PRC") meets for the first time.  (Ex. 49) |

---

[1] Ex. 1 to the Declaration of Karen M. Vickers, Dkt. 121-1

[2] *Id.*

[3] Supplemental Declaration of Karen M. Vickers, Ex. 1.  Unless otherwise noted, the remaining portions of the transcript can be found attached Ms. Vickers' supplemental declaration.

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

| | |
|---|---|
| **September 6, 2013** | *Scappoose Spotlight* publishes newspaper article, quoting plaintiff and Hanken.  (Ex. 39) |
| **September 6, 2013** | Plaintiff is placed on paid administrative leave pending outcome of hostile work environment investigation.  (Ex. 38) |
| **September 11, 2013** | Lt. Miller informs Hanken he believes plaintiff's office contains unaccounted for cash.  (Ex. 204) |
| **September 20, 2013** | Plaintiff is interviewed by the PRC (Ex. 49) |
| **September 30, 2013** | Hanken informs plaintiff that the City will engage LGPI to investigate potential violations of city financial policies.  (Ex. 47) |
| **October 14, 2013** | PRC decision (Ex. 49) |
| **November 8, 2013** | Hanken resigns his employment (Tr. Plt. 136:16-18) |
| **November 15, 2013** | *Scappoose Spotlight* publishes article regarding financial investigation.  (Ex. 51) |
| **January 2014** | Don Otterman is hired as interim City Manager.  (Tr. Otterman 289:24-290:4)[4] |
| **January – May 2014** | Mr. Otterman reinstates two week suspension.  (Tr. Otterman 291:25-292:3)[5] |
| **April 8, 2014** | Mr. Otterman terminates plaintiff effective May 8, 2014.  (Ex. 59) |

## II.   MOTION FOR JUDGMENT AS A MATTER OF LAW

### a.  Plaintiff did not prove he engaged in protected speech.

Plaintiff had the burden to prove that he engaged in protected speech.  Dkt. 120 at 10-11.

"Protected" speech means speech on a matter of public concern and speech made as a citizen.

---

[4] Dkt. 121-1.

[5] *Id.*

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

*Id.* "Speech" means actual exercise. *Wasson v. Sonoma County Junior College,* 203 F.3d 659, 662-63 (9th Cir. 2012); *Endicott v. Deschutes Cnty,* 2015 WL 853091, *4 (D. Or. Feb. 26, 2015) (dismissing employee's First Amendment retaliation claim predicated on "perceived lack of [political] support" because in a speech claim the "crucial issue is actual exercise").

### i. August 26, 2013:  Plaintiff's appeal of his own discipline is not protected speech.

Plaintiff suggests that his appeal of his two week suspension is protected speech. *See* dkt. 128 at 26-27, 30.  Plaintiff's appeal pertains solely to his personnel grievance.  (Ex. 37).  In First Amendment jurisprudence, an employee's appeal of his own discipline is not protected speech. [6] *Brownfield v. City of Yakima,* 612 F.3d 1140, 1148 (9th Cir. 2010) (an employee's complaint to superiors concerning an individual who supervises him and their power struggles is not a matter of public concern); *Connick v. Myers,* 461 U.S. 138, 147-49 (1983) ("federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency.")

### ii. Unspecified and pre-May 2012:  Ms. Ingham's request to hire an additional police officer.

Plaintiff's discussion with Ms. Ingham about pools and parks is not protected speech for

---

[6] By contrast, under Oregon's public records law, plaintiff's discipline and all three LGPI investigations are matters of public concern and subject to disclosure to the public, including the *Scappoose Spotlight*, because plaintiff was the chief of police. *See City of Portland v. Anderson,* 163 Or App 550, 998 P.2d 402 (1999) (requiring disclosure of records pertaining to investigation of police captain's off duty misconduct because he was a high ranking police officer and the materials could bear on the officer's ability to carry out his duties); *ACLU v. City of Eugene,* 360 Or. 269, _ P.3d _ (2016) (ordering release of Civilian Review Board's review of an internal investigation of police misconduct even though it did not result in officer discipline, noting "when it comes to complaints about the use of force and review of those complaints, the public interest in oversight is particularly strong." (citation omitted)).

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

at least three reasons.

First, there is insufficient evidence regarding what plaintiff said during the "discussion" about "pools and parks" to determine whether plaintiff's actual exercise was protected. Talking about city owned property or the "budget" does not automatically transform a "discussion" into a matter of public concern. *Desrochers v. City of San Bernardino,* 572 F.3d 703, 710-11 (9th Cir. 2009) (despite the Ninth Circuit's expansive language it has "never held that a simple reference to government functioning qualifies as speech on a matter of public concern.")

Whether speech is a matter of public concern depends on the "content, form, and context" of the plaintiff's speech. *See Connick,* 461 U.S. at 147-48. The plain language of the speaker's statement is examined. *Desrochers,* 572 F.3d at 712 citing *Roe v. City and Cnty. of San Francisco,* 109 F.3d 578, 580 (9th Cir. 1997). The inquiry is based on what the plaintiff claims to have said at the time he said it; post-hoc characterizations are not relevant to the analysis. *Id.* Here, the public concern inquiry is impossible because the evidence only establishes that plaintiff had a discussion with Ms. Ingham about "pools and parks." There is no evidence about what plaintiff said during these discussions.

Second, the court previously ruled that plaintiff's discussions with Hanken about Ms. Ingham's request to hire an additional police officer are not protected. Dkt. 42 at 10. The underlying discussions between Ms. Ingham and plaintiff about the same topic cannot be protected.

Third, speech which "owes its existence to an employee's professional responsibilities is not protected by the First Amendment." *Anthoine v. N.C. Cos. Consortium,* 605 F.3d 740, 749 (9th Cir. 2010) (quotation omitted). Professional responsibilities include the employee's job

PAGE 5 -    REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

description as well as ad hoc and de facto job duties.  *Fox v. Traverse Area Public Sch. Bd. of Educ.,* 605 F.3d 345, 348 (6th Cir. 2010); *see Coomes v. Edmonds Sch. Dist. No. 15,* 816 F.3d 1255, 1262 (9th Cir. 2016) (plaintiff's job description and conclusory statements about duties not sufficient to show complaints made as citizen).  In the City, when department heads could not find room in their budget for a desired expense, they looked elsewhere to try to reallocate funds. (Tr. Ingham 57:15-20).  When the discussion between plaintiff and Ms. Ingham presumably[7] veered from finding room in the police department's budget to looking elsewhere for funds, the entire discussion owed its existence to plaintiff's de facto job responsibilities – "looking elsewhere to try to reallocate funds" for a desired police department expense – even though plaintiff did not set the budget for pools and parks.

Plaintiff also points to discussions with Ms. Ingham about "city issues" and the "budget" at non-specific times.  There is insufficient evidence to engage in the requisite analysis to determine whether these discussions were on a matter of public concern.

### iii.  Pre-May 2012, unspecified 2012, spring 2013:  Questions to Ms. Herr about unpaid police department invoices

*Pre-May 2012:*  Prior to beginning the budget process in 2012, plaintiff asked Ms. Herr about some unpaid police department invoices. Plaintiff did not like this practice because it impacted his purchasing power.[8]  (Tr. Plt. 73:10-74:10)  This speech is not protected.  Dkt. 42 at 10.  At an unknown later time, plaintiff "found out" through Ms. Herr and later "confirmed"

---

[7] The evidence does not establish what plaintiff said during this discussion.

[8] There is no evidence that plaintiff expressed this concern Ms. Herr or anyone else while employed by the City.

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

that the City was holding other department's invoices. (Tr. Plt. 74:5-10) [9] The fact that plaintiff "found out" and "confirmed" information is not speech for the reasons listed above:  it is impossible to examine the content, form, and context of plaintiff's actual exercise.

*Unknown 2012*:  Sometime in 2012 "all of a sudden" the City had a new auditor.[10]  The City sent materials to the auditor's office.  (Tr. Plt 75:12-15)  After plaintiff stopped working for the City he learned that the auditor appreciated performing audits from his office, rather than on site.  (Tr. Plt. 75:16-18).  At some point plaintiff reviewed three City audits, Exs. 209-211.[11] (Tr. Plt. 159:18-161:1).  He raised a concern about them with a City Councilor named Donna Gedlich at an unknown point in time.  (Tr. Plt. 160:24-161:2).

It is impossible to determine, based on the plain language of what plaintiff claims he said, whether the content of his communications were on matters of public concern.  It is likewise impossible to determine whether plaintiff raised anything that might be considered a concern while he was still a City employee.

*Spring 2013*:  In the spring of 2013, plaintiff asked Ms. Herr about police department invoices.  (Tr. Plt 77:20-22).  Sometimes, Ms. Herr waited to pay invoices if she was nervous

---

[9] Dkt. 121-1.

[10] This is incorrect.  See page 31 *infra.*

[11]  It is unclear when plaintiff reviewed these audits.  He testified that he reviewed them before the investigations.  (Tr. Plt 161:3-4)  However, the jury was not entitled to infer that plaintiff actually reviewed Exhibits 210 or 211 and raised any concerns about them such that his concerns caused any adverse employment actions suffered in this case because those audits were not completed until *after* defendant resigned his employment with the City.  Ex. 210 at 8 (showing audit report for fiscal year ending June 30, 2013 completed December 3, 2013);  Ex. 211 at 8 (showing audit report for year fiscal year ending June 20, 2014 was completed November 13, 2014).

PAGE 7 -       REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

that plaintiff was going to overspend his allotted budget.  (Tr. Herr 358:17-359:13; 360:13-361:2) As part of his complaint about the police department invoices, plaintiff claims he asked Ms. Herr if "other invoices were being withheld again this year[.]"  (Tr. Plt. 78:1-3)[12]

It is impossible to determine whether plaintiff's single question was a matter of public concern.  Plaintiff never raised this question or concern to anyone other than Ms. Herr, a fact which weighs against finding of public concern.  And his actual exercise shows that his motivation for approaching Ms. Herr on this occasion was to air an unprotected grievance – to complain about police department invoices.  (Tr. Plt. 77:18-78:3).  Speech which contains only "passing references" to matters of public concern "incidental to the message conveyed" weighs against a finding of public concern.  *Robinson v. York,* 566 F.3d 817, 823 (9th Cir. 2009)(internal quotation marks and citation omitted); *Alpha Energy Savers v. Hansen,* 381 F.3d 917, 925 (9th Cir. 2004).

### iv.   September 20, 2013:  PRC interview

Defendant's opening brief explained why plaintiff's discussion about the budget and invoices during his interview with the PRC on September 20, 2013 was not protected.  Plaintiff argues that the court should infer that he meant to testify about invoices from other departments because Hanken did not ask *plaintiff's witnesses* whether, in addition to unprotected speech, plaintiff also engaged in protected speech.  Plaintiff, not Hanken, had the burden to prove that he engaged in protected speech.  *Eng v. Cooley,* 552 F.3d 1062, 1070 (9th Cir. 2009).

### b.  Plaintiff did not prove that Hanken knew about his speech.

Plaintiff did not prove that Hanken knew about any of the above speech.  There is no

---

[12] Dkt. 121-1.

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

evidence that plaintiff complained directly to Hanken about any of the above issues. There is no evidence that Ms. Ingham told Hanken about any discussions she had with plaintiff. There is no evidence that Ms. Herr told Hanken about plaintiff's complaints about invoices. Plaintiff did not ask a single witness whether he or she had relayed any of the purported protected speech to Hanken.

Lacking evidence, plaintiff attempts to impute other City employees' knowledge to Hanken, theorizes that the jury could have engaged in a series of speculative inferences, and improperly relies on character evidence to prove a fact (knowledge).

### i. Plaintiff did not prove Hanken knew about pre-May 2012 budget meeting discussions.

Plaintiff produced no evidence that Hanken knew about his discussions with Ms. Ingham regarding her request to hire additional police officers.

He contends the jury could infer that Hanken learned about his *protected* speech based on the content of his *unprotected* speech during the May 14, 2012 meeting. Dkt. 128 at 14. During the May 14, 2012 meeting, in response to a question from Ms. Ingham about adding an additional police officer, plaintiff said, "well, maybe there's some room elsewhere in the budget that could, you know, afford a hire; but as far as the police budget is concerned, there's no money for a police officer." (Tr. Ingham 57:8-11)[13] Ms. Ingham was "taken aback" that plaintiff did not offer his support for reallocation of the overall budget to gain additional police officers. Dkt. 128 at 14 citing Tr. Ingham 57:6-14. This evidence forecloses the plaintiff's sought after inferences.

---

[13] Dkt. 121-1.

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

Hanken's purportedly poor reaction during the meeting to plaintiff's *unprotected* speech and to Ms. Ingham and/or other councilor's speech does not prove Hanken knew that *plaintiff* engaged in protected speech.  Hanken could be as belligerent as he wanted[14] in response to what plaintiff concedes was unprotected speech.  Dkt. 128 at 51.

Plaintiff's suggestion that Hanken could have learned that plaintiff and anyone else engaged in discussions regarding "pools and parks" and whatever else from his unprotected statement that "well, maybe there's some room elsewhere in the budget" for a police officer, is conjecture.  Plaintiff's witness – Ms. Ingham – testified that at the meeting plaintiff *did not support* her proposed changes.  It is purely speculative to conclude that Hanken gleaned something from the meeting that plaintiff's own witness denied having occurred.

Additionally, this evidence reaffirms that the discussions between Ms. Ingham and plaintiff related to "Ingham's request to hire additional police officers" a topic which "is not constitutionally protected."  Dkt. 42 at 10.

Next, when, according to plaintiff, Hanken stopped plaintiff the next day and told him "I'm mad at you.  You stay on your side of City Hall.  I don't want to see you over here[,]" (Tr. Plt. 71:20-72:4), the only inference the jury could draw is that in Hanken really did not want to see plaintiff and/or perhaps he was angry about unprotected speech he had heard the day before. Plaintiff's arguments and testimony about his own beliefs about Hanken's motives are irrelevant. *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1028 (9th Cir. 2001).

When, in August 2012, Hanken told plaintiff "I need you to quit listening to Councilor

---

[14] Hanken does not concede that he was belligerent.

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

Ingham about her – the budget and – for the best interest – 'Ms. Ingham will be the one that will ruin your career[15] here in the City of Scappoose' – if I continued to listen to her budget inquiries[,]" (Tr Plt. 75:19-76:5), Hanken could only have been referring to the inquiries he knew about. The only *inquiries* plaintiff has ever suggested that Ms. Ingham made were about hiring another police officer. These inquiries and plaintiff's direct discussions with Hanken about them are not protected. Dkt. 42 at 10.

Plaintiff produced no evidence that Hanken knew about alleged discussions about "City issues" at the grocery store (or what "City issues" they might have discussed).[16]

> ii. **Plaintiff did not prove Hanken knew about questions regarding invoices, "the budget" generally, or financial accounting principles or audits.**

Plaintiff submitted no evidence that he complained directly to Hanken about holding over invoices or alleged changes to the audit process. He did not ask any witness whether he or she had conveyed those complaints to Hanken. None of these complaints are written. There is no evidence, other than plaintiff's self-serving testimony, that the City held even a single invoice for another City department.

Plaintiff's principal argument with respect to Hanken's knowledge of this category of

---

[15] At various points in plaintiff's response brief, dkt. 128 at 29, this statement has morphed into an allegation that Hanken claimed *he* would ruin plaintiff's career if plaintiff listened to Ms. Ingham. That assertion is not grounded in the trial record.

[16] According to plaintiff, Ms. Ingham testified that she talked to plaintiff about the budget at social gatherings. Her testimony was equivocal. She could not definitely testify about whether any of these conversations occurred, much less recall the content of them such that the court could determine whether conversations addressed a matter of public concern or whether they related to the police department budget or other matters that would have been within plaintiff's job duties. *Id.*

PAGE 11 -    REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

complaints is that "[w]hen Plaintiff raised *these* budget and financial issues with Defendant, Defendant told him he 'didn't know what he was talking about.'" Dkt. 128 at 16 citing Tr. Plt. 76:16-21.  Plaintiff never asserted that he made complaints about *these* budget topics to Hanken. Rather, the cited portion of the trial transcript reads:

> Q:  Well, did he *ever* – did Mr. Hanken *ever* comment to you about your level of understanding of budget and financial management issues?
>
> A:  Yeah.  I didn't know what I'm talking about.

(emphasis added) (Tr. Plt. 76:16-21).  Plaintiff and Hanken worked together for 10 years.  At best, plaintiff proved that at some point during their working relationship, about some aspect of the budget and financial management issues, Hanken told plaintiff he did not know what he was talking about.  That is not the same as proof Hanken knew about any specific protected complaints about invoices, audits, or accounting principles.

Plaintiff next posits that Hanken knew about his complaints because after he complained about police invoices, Ms. Herr paid some of the withheld invoices before the end of the fiscal year.  (Tr. Plt. 78:4-7)[17]  This is not evidence of Hanken's knowledge of protected complaints. Ms. Herr explained that sometimes the City was nervous it was going to run out of funds, so it would hold police department invoices, and only police department invoices.  (Tr. Herr 360:16-24)[18]  Then, depending on the City's budget situation, it would pay the police department invoices at the end of the fiscal year (June) or in the first check run in the new fiscal year (July).

---

[17] Dkt. 121-1.

[18] *Id.*

PAGE 12 -     REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

*Id.* Ms. Herr's testimony regarding when and why invoices were paid is not contradicted.

Finally, plaintiff theorizes that Hanken knew about his protected speech because when he complained to Ms. Herr about the police department invoices, she said "she's just doing what she's being told: Hold the invoices." Again, this does not prove knowledge of any protected speech by the plaintiff. If the hearsay is to be credited it only establishes that at some time, Ms. Herr was told to hold invoices when the police department was about to outspend its allotted budget.

### iii.  Plaintiff did not prove Hanken knew about his comments during the PRC interview.

Plaintiff makes a four part argument about Hanken's knowledge of his purported speech during plaintiff's interview with the PRC. All four lack merit.

First, he argues the jury could infer Hanken's knowledge because of some testimony plaintiff gave about an email his attorney sent to "the City."[19] The City is not a defendant in this lawsuit. Plaintiff was required to prove Hanken was personally liable for his damages. Knowledge of protected activity cannot be imputed. *Raad v. Fairbanks North Star Borough Sch. Dist.,* 323 F.3d 1185, 1197-98 (9th Cir. 2003); *O'Connor v. Cnty of Clackamas,* 2013 WL 3818143 (D. Or. July 22, 2013) (declining to infer that City officials had knowledge of plaintiff's trial testimony based solely on the subject of the protected activity and its connection to the defendants' job responsibilities).

---

[19] Plaintiff's testimony about exhibit 44 was false. Exhibit 44 is an email, rife with hearsay, that plaintiff was not permitted to admit. The email relates exclusively to plaintiff's appeal of his two week suspension. Plaintiff was likely describing Exhibit 45, which confirms that the budget improprieties plaintiff complained about related solely to the police department.

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

Plaintiff's second and third arguments are combined. Essentially, he asserts that because City attorney Ron Guerra attended the September 20, 2013 PRC interview and because Mr. Guerra and Hanken spoke on the telephone on the day the PRC issued its decision, the jury could infer Mr. Guerra told Hanken about plaintiff's supposed speech. *See* Dkt. 128 at 20. There is actual evidence of the conversation between Mr. Guerra and Hanken – Hanken called Mr. Guerra and said, "I'm going to have to leave. I'm not going to hang around." (Tr. Hanken 495:22-496:1). It is wholly speculative to conclude they discussed anything else. *Lakeside-Scott v. Multnomah Cnty.,* 556 F.3d 797, 808 (9th Cir. 2009) (jury not entitled to infer defendant employee influenced termination decision simply because plaintiff's computer, which turned up evidence relied upon as the basis for the termination, was placed in employee's office); *see Odermatt v. Way,* __ F.3d __, 2016 WL 3034481, *12 (E.D.N.Y. May 25, 2016) (granting motion to dismiss where pleading showed at most that telephone conversation took place, but nothing establishing that the substance of the conversation related to protected speech).

Finally, plaintiff's argument that Hanken called LGPI to commence the third investigation soon after the PRC rendered its decision reversing the two week suspension is evidence of knowledge lacks merit. Plaintiff was on notice that the City plaintiff engaged LGPI on September 30, 2013, fourteen days before the PRC even rendered its decision. (Ex. 47) The fact that Hanken called LGPI on the same day the PRC issued its decision does nothing to establish Hanken knew about protected speech that *may* have occurred a month earlier.

**c. Plaintiff did not prove that his speech caused an adverse employment action.**

If Hanken did not know about any of plaintiff's speech then it cannot have caused any adverse employment actions. But even if plaintiff proved knowledge, knowledge alone does not

PAGE 14 -    REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

establish causation.  Plaintiff did not otherwise prove causation.

> ### i.  Proximity:  The time gap between plaintiff's speech and the adverse actions is too large to infer causation.

"[I]n some retaliation cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity.  *Villarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (9th Cir. 2002).  However, "timing alone will not show causation in all cases; 'in order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression.'"  *Id.*  Multiple courts have held that there is no causal connection where the protected conduct and the adverse action did not occur close in time.  *See, e.g., Manatt v. Bank of Am.,* 339 F.3d 792, 802 (9th Cir. 2003) (holding that a nine-month lapse between the plaintiff's activity and the defendant's alleged adverse decision was too large to create an inference of a causal nexus); *Vasquez v. Cnty of L.A.,* 349 F.3d 634, 647 (9th Cir. 2003) (13-month lapse insufficient to support an inference of causation with respect to retaliatory motive); *Erickson v. Pierce Cnty,* 960 F.2d 801, 803 (9th Cir. 1992) (granting judgment to employer notwithstanding the verdict where there was a 3-month lapse between the date that plaintiff's employer became aware of his protected activity and his subsequent termination); *Jamal v. Wilshire Mgt. Leasing Corp.,* 320 F. Supp. 2d 1060, 1080 (D. Or 2004) (surveying cases holding that three- and four-month periods between complaints and employment decisions were too long to establish a causal link without additional evidence supporting a causal link).

The plaintiff's response brief makes a multitude of arguments about the proximity in time between two alleged adverse employment actions.  That is not the standard.  *Villarimo,* 281 F.3d

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

at 1065.

The time gaps in this case are simply too far to support a claim of retaliation. The time between plaintiff's alleged speech before the budget meeting (May 14, 2012) and the notice of commencement of the PIT investigation (July 17, 2013) is 429 days – a span of one year, two months and three days. Plaintiff's alleged single question to Jill Herr about other department invoices in March 2013 and the PIT investigation (July 17, 2013) is approximately four months (there is no way to know for sure because plaintiff did not testify when this conversation occurred, and according to Ms. Herr the conversation never happened). [20] These time gaps are plaintiff's best case scenario arguments. The time gaps between his other alleged speech and adverse employment actions is significantly longer.

### ii. Opposition: Plaintiff did not prove Hanken expressed opposition to *plaintiff's protected* speech.

There is no evidence Hanken expressed any sort of opposition to plaintiff's allegedly protected speech. To prove causation by opposition, plaintiff was required to produce actual evidence showing that defendant expressed opposition to his protected speech. *Keyser v. Sacramento Unified Sch. Dist.,* 265 F.3d 741, 752-53 (9th Cir. 2001) ("concluding that summary judgment again [the plaintiffs] on their First Amendment claim was appropriate"); *compare Schwartzman v. Valenzuela,*846 F.2d 1209, 1211 (9th Cir. 1988) (finding evidence of opposition where the plaintiff produced a memorandum from his employer "warning him that he was not

---

[20] It is impossible to calculate the span of time between plaintiff's purported questions about a change in auditors because plaintiff presented no evidence establishing when, in 2012, these comments were allegedly made. It is likewise impossible to calculate the time between plaintiff's questions about the audits and an adverse employment action because plaintiff presented no evidence establishing when he asked these questions.

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

authorized to speak out" about the specific issues that formed the basis for his protected activity); *Allen v. Scribner,* 812 F.2d 426, 434-35 (9th Cir. 1987) (the plaintiff met his burden by producing affidavits from two co-workers attesting to employer's statements that plaintiff should be removed because he engaged in protected activity). Plaintiff provided nothing that approximates the evidence in *Schwartzman* or *Allen.*

His evidence that Hanken opposed his speech is nearly identical to his evidence he has attempted to use to prove that Hanken knew about his speech. These arguments are discussed above. In short, it is not enough for plaintiff to point to evidence that some people thought Hanken was a "bully" regarding the budget or that Hanken did not appreciate questions about the City's budget. Plaintiff was required to present actual evidence establishing that Hanken opposed *his protected* speech, not just any speech. Plaintiff failed to meet this burden.

### iii.    Pretext:  Nothing in the record suggests that Hanken's explanations for the adverse actions he took were false or pretextual.

A plaintiff can "show pretext either (1) by showing that unlawful discrimination more than likely motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable. *Dominguez-Curry v. Nevada Transp. Dept.,* 424 F.3d 1027, 1037 (9th Cir. 2005) (citation omitted). Circumstantial evidence must be "specific and substantial." *Id.* at 1038. The pretext inquiry does not ask whether the defendant's actions were fair, wise, or objectively correct. *Connick,* 461 U.S. at 146-47. Instead, "[i]n judg[ing] whether…proffered justifications were 'false,' it is not important whether they were *objectively false…*[r]ather, courts 'only require that an employer honestly believed its reasons for its actions….'" *Villiarimo,* 281 F.3d at 1063. The question is

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

whether the stated reason is "so implausible as to be unworthy of credence." *Norris v. City and Cnty of San Francisco,* 900 F.2d 1326, 1330 (9th Cir. 1990).

### 1. PIT Investigation

There is no dispute about what led Hanken to engage LGPI. Hanken received a memorandum from Lt. Miller that stated in relevant part, "I recommend an internal investigation be done by the Oregon State Police." (Ex. 201) There is no dispute about the facts underlying Miller's memo: plaintiff ordered a subordinate police officer to perform the PIT maneuver; the subordinate police officer had a documented history of poor driving; and plaintiff's order violated multiple police department policies.[21] The dispute pertains only to the measure of discipline. But federal juries do not sit as super-personnel departments, empaneled to examine the business judgment and character of supervisory employees. *Cf. Bullington v. United Air Lines,* 186 F.3d 1301, 1318 n. 4 (10th Cir. 1999).

Plaintiff contends he has proven pretext because he believes that upon receipt of Lt. Miller's memo, Hanken should have disregarded it. Plaintiff continues to argue that the appropriate response to a complaint about the use of potentially deadly force in violation of

---

[21] Plaintiff asserts that "Defendant didn't balk at commencing an immediate and full blown investigation of plaintiff." Dkt. 128 at 25. This mischaracterizes the timeline. Chief Miller testified that he provided his memo to plaintiff on May 30, 2013. Plaintiff "read it, handed it back to me, and said, "Contact Ron Guerra." (Tr. Miller 373:5-7). Lt. Miller waited until he received advice from Mr. Guerra and then he and defendant engaged LGPI. (*Id.* at 384:4-8). Plaintiff was notified that about the discipline on July 17, 2013. May 30, 2013 to July 17, 2013, a period of 48 days, is not "immediately."

Plaintiff faults defendant for failing to provide a copy of the complaint to him. Plaintiff received a letter titled "Notice of Investigation Commencement." (Ex. 33) The letter clearly sets for the nature of the investigation.

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

police policy is a pat on the back and a stern warning.  Dkt. 128 at 32.  Whatever the merit of

that argument, it is immaterial to whether plaintiff proved pretext.  The question is whether

plaintiff proved that the stated reasons for investigating the PIT maneuver were "so implausible

as to be unworthy of credence."  *Norris,* 900 F.3d at 1330.  He did not.

### 2.  Hostile Work Environment Investigation

As plaintiff admitted, on August 1, 2013, well before the PIT investigation was finalized,

he was notified that the City was going to conduct an investigation into the allegation that he had

created a hostile work environment within the Scappoose Police Department.  (Tr. Plt. 126:23-

25; 127:13-18).  The notification advises that the review will be conducted by LGPI.  (Ex. 34).

Plaintiff was not notified about his two week suspension until August 23, 2013, and he did not

appeal the suspension until August 26, 2013.  Therefore, plaintiff's argument that the "jury was

entitled to reasonably infer that the true motivation for the 'hostile workplace' investigation was

to punish Plaintiff for appealing his two week suspension" lacks merit.  He proffers no other

pretext argument regarding the hostile work environment investigation.

It is undisputed that Sgt. Carpenter made a hostile work environment complaint against

plaintiff. Aaron Olson from LGPI was retained to investigate the complaint.  Mr. Olson's

testimony substantiated that Sgt. Carpenter had made complaints and that it was appropriate for

the City to use him to evaluate the complaints to determine their validity.  (Tr. Olson 218:2-8).

Plaintiff therefore did not prove that the reason for commencing the investigation – Sgt.

Carpenter's complaint – was "so implausible as to be unworthy of credence."

///

///

PAGE 19 -     REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

### 3. Paid Administrative Leave

Paid leave can qualify as an adverse action if it is accompanied by loss of another job related benefit, like lost overtime or holiday pay. *Dahlia v. Rodriguez,* 735 F.3d 1060, 1078-79 (9th Cir. 2013). Plaintiff did not allege he suffered any compounding consequences to his employment. Paid leave is therefore not an adverse employment action.

Moreover, there is no evidence plaintiff was placed on paid leave for any reason other than those stated by Hanken. The jury was not "entitled to infer that Defendant's true motive for placing Plaintiff on administrative leave and banning him from all public property" was retaliatory and an effort to "*ensure* that Plaintiff would stop questioning his financial practices with Jill Herr or with other department heads[ ]" without some evidence. Dkt. 128 at 36. The evidence is that plaintiff was placed on paid administrative leave on September 6, 2013. (Ex. 38). His most recent *unprotected speech* – a single question – was seven months prior.

### 4. Financial Investigation

On September 11, 2013 Hanken received a memorandum from Lt. Miller stating that he and Ms. Herr could not locate police reserve account money previously held in an account at Chase Bank. (Ex. 204). Hanken and Lt. Miller later learned that plaintiff kept $2,400 cash in his office. (Tr. Miller 377:19-378:17) Hanken did not know that plaintiff stored thousands of dollars in cash in his office. (Tr. Hanken 451:12-14). Hanken discussed his discovery with Columbia County officials. They recommended a forensic audit. (Tr. Hanken 452:4-453:19).

Plaintiff knew Hanken had decided to engage LGPI on September 30, 2013, 14 days *before* the PRC issued its decision reversing plaintiff's two week suspension. Thereafter, plaintiff's friends on the City Council demanded that the City stop further investigations; they

did not want to know whether plaintiff created a hostile work environment or violated City financial policies.  (Tr. Hanken 459:22-460:9)  Just before he left office, Hanken exercised his own First Amendment rights by speaking to the *Scappoose Spotlight*.  Speech in response to speech is not an adverse employment action.  *Nunez v. City of Los Angeles,* 147 F.3d 867, 875 (9th Cir. 1998).

### d.  Plaintiff did not prove that Hanken caused his termination.

Plaintiff only sought economic damages related to his termination.  Absent Mr. Otterman's decision to terminate plaintiff, plaintiff would have no economic damages because – at least as he argued to the jury – he would still be working as the chief of police for the City.[22]

In section 1983 claims, an individual with retaliatory animus can be liable for constitutional injuries if he directly participates in the deprivation or if he sets "in motion a series of acts by others which [he] knows or reasonably should know would cause others to inflict the constitutional injury."  *Gilbrook v. City of Westminster,* 177 F.3d 839, 847-78 (9th Cir. 1999).  But in employment cases an individual is not liable simply because he initiated "a disciplinary process that result[ed] in an employee's otherwise appropriate and lawful termination."  *Lakeside-Scott,* 556 F.3d at 805.  If a subsequent decision-maker comes to his own "independent, principled decision" and eventually decides to terminate an employee, the employee is not entitled to damages for his termination because "by definition [there] is no 'constitutional injury.'"  *Id.*  Here, plaintiff failed to prove that Mr. Otterman did not come to his own decision to terminate him.

---

[22] Plaintiff cannot argue otherwise.  His economic damages evidence was solely based on his argument that but-for Hanken's alleged retaliatory actions, he would have maintained his employment with the City of Scappoose for 9 years.

PAGE 21 -    REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

Proof that Hanken hired LGPI to investigate complaints is not sufficient. *Poland v. Chertoff,* 494 F.3d 1174, 1183 (9th Cir. 2007). To hold Hanken liable, plaintiff was required to establish that Hanken had a "pervasive influence" on the investigations that led to his injury, *i.e.* his termination. *Id.* at 1183. There is no pervasive influence where, as here, the downstream employee does not recommend termination, set the list of investigation's interviewees, or overwhelmingly participate in the investigatory interviews. *See Lakeside-Scott,* 556 F.3d at 808.

Hanken never spoke to Mr. Otterman about plaintiff. (Tr. Otterman 290:19-24)[23] Mr. Otterman's decision was based on a review of the three LGPI investigatory reports. (Tr. Otterman 291:2-8)[24]

There is no evidence that Hanken had a pervasive influence on the LGPI investigations. Hanken did not select the interviewees for any of the investigations. Hanken was not interviewed as part of the PIT investigation. (Tr. Stoelk 322:3-322:21) The materials which formed the basis of the PIT Investigation came from Lt. Miller, a video recording of the incident, and Mr. Stoelk's interviews with plaintiff, Officer Miltich, and Trooper Oxenrider.

There is no evidence Hanken subsequently participated in the hostile work environment investigation. The investigator reviewed various documents and interviewed 16 people. (Tr. Olson 216:23-217:5)

There is no evidence about the financial investigation, except that it occurred and that Mr. Otterman reviewed the investigator's reports and her conclusions. She concluded that plaintiff

---

[23] Dkt. 121-1.

[24] *Id.*

PAGE 22 -    REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

violated numerous City policies by, for example, maintaining "a bank account to be used as a slush fund for Police Department business to avoid making purchases through the City's budget process." (Ex. 205)

Mr. Otterman decided to terminate the plaintiff "after reviewing the three reports that had been done – the report regarding the pursuit, the financial report, and the hostile work environment report[.]" (Tr. Otterman 290:2-8)[25]  Plaintiff failed to prove that Hanken had pervasive influence on any of the LGPI reports.  Because plaintiff did not prove that Hanken sufficiently influenced Mr. Otterman's decision to terminate him and has argued that he was not attempting to prove that his termination was wrongful, plaintiff is not entitled to recover damages related the "injury" he suffered when he was terminated.

### e.  Hanken is entitled to qualified immunity.

Plaintiff's claim fails as a matter of law for the reasons set forth above.  But even if this court were to conclude that the jury reasonably could have found in plaintiff's favor on his claim, Hanken would still be entitled to judgment as a matter of law on qualified-immunity grounds because the contours of the free-speech claim were not "clearly established."

The examination of whether a right is "clearly established" does not proceed at a level of broad and abstract generality, such as "right to free speech."  *Reza v Pearce*, 806 F.3d 497, 506 (9th Cir. 2015) ("In evaluating the question of qualified immunity, we must be careful not to define clearly established at a high level of generality.") (internal quotations omitted).  If that level of generality were the test, as the Court explained in *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987), it "would bear no relationship to the 'objective legal reasonableness' that is the

---

[25] *Id.*

PAGE 23 -    REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

touchstone" for qualified immunity.  Rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violations that right."  *Id.* at 640.  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful[,] . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Hope v. Pelzer*, 536 U.S. 730 (2002) (citing *Anderson*, 483 U.S. at 640 (internal citations omitted)).

In other words, although the alleged conduct need not have been described as unconstitutional, in just so many words, existing case law must have provided the defendant with a "fair warning" that the conduct was unconstitutional.  *Hope*, 536 U.S. at 741.  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right."  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (emphasis added; internal quotation marks and alterations omitted).

The inquiry, then, begins by reviewing binding precedent.  *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004).  In the absence of binding precedent on point, courts will consider whether the law is clearly established in light of other decisional law, including unpublished decisions and decisions of state courts, other circuits and district courts.  The law is not clearly established unless existing precedent has placed the "constitutional question beyond debate."  *Ashcroft*, 131 S. Ct. at 741.  As a result, as one commentator has observed, the "reality" is that officials prevail on the basis of qualified immunity on a "high percentage of section 1983

PAGE 24 -    REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

claims." 1A Schwartz, Section 1983 Litigation:  Claims and Defenses, 4th ed, § 9A.02[B], 9A-14.

When Hanken made the decisions at issue in this case in 2013, the right of a public employee to be free from retaliation for constitutionally protected speech was clearly established. But, for two reasons, *what qualifies as protected speech was (and is) far from clear.*

First, whether speech is protected depends on whether it relates to a matter of "public concern," and "the boundaries of the public concern test are not well defined." *City of San Diego v. Roe*, 543 U.S. 77, 83-84, (2004) (internal quotations omitted).  If not clearly failing the public-concern test, the speech at issue here falls within the gray area between speech of public and private concern.  *See also Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007) (holding that the defendants were entitled to qualified immunity for firing the plaintiff because the speech fell "within the gray area between" speech of public and private concern).  Under the circumstances, then, the contours of plaintiff's rights were not sufficiently clear so that every reasonable official in Hanken's position would have understood that plaintiff's budget-related speech was constitutionally protected.

Second, whether speech is protected also depends on the *ad hoc* balancing of competing interests.  This makes it nearly impossible to prove that retaliation for the speech violated "clearly established" law in the absence of a case that is nearly directly on point.  As the Ninth Circuit has recognized, because "the determination whether an employee's expression is constitutionally protected requires a . . . balancing of competing interests, the law regarding public-employee free speech claims *will rarely, if ever, be sufficiently clearly established to preclude qualified immunity*." *Brewster v. Board of Education*, 149 F.3d 971, 979-80 (9th Cir.

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

1998), *cert. denied*, 526 U.S. 1018 (1999) (internal quotations omitted; emphasis added); *see also Lytle v. Wondrash,* 182 F.3d 1083, 1088-89 (9th Cir. 1999) (defendants were entitled to qualified immunity because the result of the context-specific *Pickering* balancing test was not "clear-cut").[26]

There is no reason to make an exception here.  Even if plaintiff engaged in speech on matters of that are clearly of public concern, it is not clear whether that speech qualifies as protected speech under the *Pickering* balancing test, given the content of the speech, plaintiff's high-level role in the city government, and the city's interest interests in running an effective and efficient office.  *See Pickering v. Bd. of Education*, 391 U.S. 563 (1986); *Pool v. VanRheen*, 297 F.3d 899, 908 (9th Cir. 2002) (under *Pickering*, public employer's interests in effectively running the sheriff's office outweighed free speech interests of "high profile employee" who reported directly to the elected Sheriff himself); *Lewis v. Cowen*, 165 F.3d 154, 165 (2d Cir.

---

[26]  Indeed, given the nature of *Pickering* balancing, most circuits have held that defendants are almost always entitled to qualified immunity in free-speech retaliation cases.  *See, e.g., Stanley v. City of Dalton*, 219 F.3d 1280 (11th Cir. 2000) (given the fact-specific nature of *Pickering* balancing, defendants are entitled to qualified immunity except in the "rarest" of *Pickering* cases); *McVey v. Stacy,* 157 F.3d 271, 277 (4th Cir. 1998) (public employee First Amendment rights will usually not be clearly established because of the "sophisticated" nature of *Pickering* balancing and because public officials should not be liable for making "bad guesses in gray areas"); *Gregorich v. Lund*, 54 F.3d 410, 414-15 (7th Cir. 1995) (officials are normally entitled to qualified immunity in First Amendment retaliation cases because differences "in the nature of the competing interests from case to case" make it difficult for officials to predict outcome of *Pickering* balancing, and officials "are not expected to be prescient"); *Bartlett v. Fisher*, 972 F.2d 911, 916 (8th Cir. 1992) ("because *Pickering's* constitutional rule turns upon a fact-intensive balancing test, it can rarely be considered 'clearly established' for purposes of the . . . qualified immunity standard"); *Noyola v. Texas Dept. of Human Resources*, 846 F.2d 1021, 1025-26 (5th Cir. 1988) (because of the "case-by-case" balancing that must take place in the First Amendment public-employment cases, "[t]here will rarely be a basis for a *priori* judgment that the termination or discipline of a public employee violated 'clearly established' constitutional rights").

PAGE 26 -    REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

1999) (under *Pickering*, a "public employer's interests in running an effective and efficient office are given the utmost weight where a high-level subordinate insists on vocally and publicly criticizing the policies of his employer"); *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 598 (2008) (observing that public employers are entitled to "wide latitude" in their dealings with public employees).

The jury concluded that defendant violated plaintiff's constitutional rights under a constitutional theory that is evolving and unsettled. Because the theory – particularly, its application to a high-level public employee like plaintiff – remains imprecise, it cannot be said that defendant violated a clearly established constitutional right.

Plaintiff all but concedes this point. In his response brief, he does not address the merits of defendant's qualified immunity argument. He argues instead that defendant waived qualified immunity by failing to ask the jury to "decide the issue of qualified immunity." Dkt 128 at 39. On that point, plaintiff is confused. While it may be appropriate in some cases to submit a qualified immunity defense to the jury, it is the exception, not the norm. *See Conner v Heiman*, 672 F3d 1126, 1131 (9th Cir 2012) (qualified immunity question may be submitted to the jury "only" when "historical facts material to the qualified immunity determination are in dispute"); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008) ("Qualified immunity is a question of law, not a question of fact."). Where, as here, the defense depends on the application of judge-applied tests – the public-concern test and the balancing test – the question is clearly one for the court to decide, not the jury.

///

///

PAGE 27 -    REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

### III.    MOTION FOR NEW TRIAL OR REMITTITUR

#### a.    The jury's award of damages was excessive.

The jury's non-economic damages award was excessive.  The primary basis for plaintiff's non-economic damages award is his claim that he was not permitted to respond to media coverage about the LGPI investigations.

Plaintiff's response is, in fact, included in the first two newspaper articles.  (Ex. 39, quoting plaintiff; Ex. 49, quoting plaintiff's appeal of his own discipline).  The final *Scappoose Spotlight* article was published on November 15, 2013, a week after Hanken left the City.  (Ex. 51)  The November 15, 2013 article forms the basis for most if not all of plaintiff's damages in this case.  He argues that while he "was being painted as a dirty cop, the community wanted to know his side of the story."  Dkt. 128 at 47.  This is clearly an attempt to hold Hanken liable for an action that he did not take; Hanken had already resigned by the time the November 15, 2013 article was published.  Plaintiff presented no evidence to establish that Hanken caused a subsequent city manager's supposed continuation of a "gag order" that left him unable to respond to the November 15, 2013 article.  Moreover, there is no evidence he was actually "gagged."  He testified that he submitted multiple letters to the editor, including at least one on November 15, 2013, *after* Hanken resigned from the City.[27]  (Tr. Plt. 156:19-157:14; Ex. 53)

Plaintiff's reliance on *Harper v. City of Los Angeles* to support his three million dollar economic damages award is misplaced.  The *Harper* plaintiffs did not bring a First Amendment

---

[27] His inability to defend himself is likely also impacted by the existence of Ms. Paxton's report into his financial improprieties and the fact that the report is likely a public record.  The report is extensive and detailed, and it concludes that plaintiff violated numerous City policies. (Ex. 205)

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

retaliation claim or any other employment related claim.  Instead, they proved that their own employer had arrested them and charged them with felony crimes without probable cause. *Harper,* 533 F.3d 1010, 1015 (9th Cir. 2008).  The police officers had to stand trial on the felony charges, and they were ultimately acquitted.  Here, plaintiff was not accused of much less charged with any crimes.  The article and photograph he complains about specifically note that he was <u>not</u> suspected of criminal activity.  (Ex. 51)  And, plaintiff was not acquitted of anything during this trial.

The plaintiff police officers in *Harper* experienced significant emotional and personal effects.  They proved that they suffered from paranoia, thoughts of suicide, and hospitalization. One officer gained 100 pounds.  Two officers were informed that they had been placed on a hit list.  The wife of one officer left him.  Another officer filed for bankruptcy.  In contrast, plaintiff "lost his ability to be Chief of Police" because a non-defendant fired him, he missed out on a few public events like high school football games, he had some trouble sleeping at night, had difficulty eating, and lost a few friends.

Moreover it does not appear that the plaintiffs' counsel in *Harper* made the inappropriate "send a message" argument in closing argument that the plaintiff's counsel made in this case.

The jury's economic damages award, essentially nine years of pay including seven years of lost future income was excessive.  The purpose of front pay is simply to compensate plaintiff until he finds other employment, generally a period of two to three years.  *See, e.g., Ridenour v. Kuker,* 175 N.W.2d 287, 291-92 (Neb. 1970).

///

///

PAGE 29 -    REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

**b.  Plaintiff did not prove that he engaged in protected speech.**

For the reasons set forth above, the court should find that plaintiff did not engage in protected speech.  But even if the court disagrees, after reweighing the evidence, it should find that plaintiff did not meet his burden of proof with respect to this element of his claim.

The overwhelming weight of the evidence establishes that Ms. Ingham and plaintiff's relevant discussions involved Ms. Ingham's request to hire an additional police officer.  The record is silent about what plaintiff himself said during this conversation.  There is no evidence that the subject of the conversation was ever communicated to Hanken beyond plaintiff's self-serving testimony about Hanken's comments and his own interpretations about what Hanken intended by those comments.  (Tr. Hanken 432:9-433:2)

The weight of the evidence establishes that plaintiff did not complain about the City's decision to hold over invoices for departments, except his own.  The City only held invoices when it feared that plaintiff was going to overspend his allotted budget.  Plaintiff did this repeatedly, including in 2013 when he: (a) spent almost $9,000 on ammunition only to let $3,515 of it sit on a shelf at the ammunition dealer for nine months, including five months after the City had paid for it, (Ex. 19; Tr. Heller 44:4-22) and (b) spent $607 of the City's money purchasing himself a retirement badge which he purportedly planned to store in his desk until 2031 (Ex. 59 at 6-9; Tr. Plt. 137:19-138:16; 112:21-113:2).  There is no evidence that any other department similarly overspent its budget.  Although plaintiff submitted two late paid invoices over a two year period for his own department, no similar evidence for other City departments was introduced.  City officials who manage invoices explained that no other invoices were held and that they never discussed other department's invoices with plaintiff.  (Tr. Herr 360:10-15;

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

360:25-361:2; Head 364:13-15)[28]   Additionally, there is no evidence Hanken ever knew that plaintiff questioned Ms. Herr's decision to hold over police department or any other department's invoices.  (Tr. Hanken 431:9-432:5)

      Plaintiff's testimony regarding concerns about the City's auditor and audits was not credible.  The City did not "all of a sudden" get a new auditor in 2012.  Mr. Conner has been the City's auditor since 2010.  (Tr. Herr 361:19-24; Tr. Conner 276:21-22).  Mr. Conner's audits were and are publicly available on the City's website.  (Tr. Conner 286:19-23)  Plaintiff did not establish when he reviewed the 2012, 2013, and 2014 audits, when he asked questions about them, or the content of his questions.  His testimony that he reviewed the 2013 and 2014 audits before investigations starts is untrue; neither audit was completed until *after* plaintiff received notice of the first investigation on July 17, 2013.  (Exs. 210, 211) Furthermore, there is no evidence Hanken knew about any questions plaintiff had about the auditor or the audits.  (Tr. Hanken 432:3-5)

      Finally, the weight of the evidence establishes that plaintiff did not engage in protected speech during his PRC interview.  Plaintiff's letter appealing his own discipline, which prompted the City to form the PRC, does not mention any budget issues.  (Ex. 37)  The four page document the PRC generated to convey its decision does not mention budget issues.  (Ex. 49) No witness testified that plaintiff engaged in protected speech during the PRC interview.  Even if the court is inclined to speculate that plaintiff engaged in protected speech, he offered only speculation in an attempt to establish Hanken's knowledge of this category of speech.  Hanken testified he did not know anything about this speech.  (Tr. Hanken 434:3-13)

---

[28] Dkt. 121-1.

PAGE 31 -    REPLY TO RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

After reweighing the evidence, the court should find that plaintiff did not exercise his right to engage in protected speech.

### c.  Admitting evidence related to the police department budget substantially prejudiced Hanken.

Prior to trial, Hanken sought summary judgment on the question of protected speech. The Court denied the motion, but ruled that speech related to the police department budget was not protected.  Dkt. 42 at 10.  Plaintiff's response brief illustrates why evidence regarding unprotected speech was confusing and distracting when, in the same paragraph, he concedes that everything he said during the May 14, 2012 budget meeting was unprotected, but then turns around and argues that Hanken's response to his unprotected speech is somehow evidence of his knowledge and opposition to *protected speech.*  Dkt. 51 at 46.  Plaintiff's response brief confuses the issue of protected an unprotected speech; the jury was likely similarly confused.

### d.  Mr. Bickmore's mugshots substantially prejudiced Hanken.

Plaintiff continues to argue that his actions during the PIT maneuver were justified because Mr. Bickmore looked "deranged," a contention he augmented at trial by admitting four mugshots of Mr. Bickmore taken some years after his apprehension.  It should not be a controversial position that a police chief is not permitted to justify ordering potentially lethal force against a *suspect* based on his appearance in still photographs.  Replace "deranged" with "young man in hoodie" and this is patently obvious.  Plaintiff has proffered no other reason for admission of the mug shots.

///

///

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400

## CONCLUSION

Plaintiff did not prove that he engaged in protected speech, that Hanken knew about any speech, or that his speech caused any adverse employment actions. According, Hanken requests that the Court grant judgment in his favor. Alternatively, Hanken requests that the Court order a new trial or remit the damages award.

DATED: September 26, 2016.

MERSEREAU SHANNON LLP

_s/ Karen M. Vickers_
**KAREN M. VICKERS,** OSB No. 913810
kvickers@mershanlaw.com
**BLAKE H. FRY,** OSB No. 100128
bfry@mershanlaw.com
503.226.6400
Of Attorneys for Defendant Jon Hanken

MERSEREAU SHANNON LLP
ONE SW COLUMBIA STREET, SUITE 1600
PORTLAND, OREGON 97258-2014
(503) 226-6400